**UNITED STATES of America, Appellee,**

v.

**Arlynton L. PRAWL, a/k/a Pooh, Defendant–Appellant.**

**No. 885, Docket No. 98–1259.**

United States Court of Appeals, Second Circuit.

Argued Dec. 8, 1998.

Decided Feb. 19, 1999.

John Humann, Buffalo, NY (Federal Public Defender's Office, Western District of New York, Marybeth Covert, Research & Writing Specialist, on the brief), for Defendant–Appellant.

James P. Kennedy, Jr., Assistant United States Attorney, Buffalo, NY (Denise E. O'Donnell, United States Attorney for the Western District of New York, on the brief), for Appellee.

Before: WINTER, Chief Judge, OAKES and JACOBS, Circuit Judges.

JACOBS, Circuit Judge:

Arlynton Prawl appeals from his conviction on four drug-related offenses in the United States District Court for the Western District of New York (Elfvin, *J.*). The district court omitted from the jury charge several instructions requested by Prawl, including: one directing the jury to disregard the guilty plea of a testifying co-defendant (a Mr. Graham) when assessing the charges against Prawl; and four advising wary consideration of testimony by government witnesses who are accomplices or informers, or beneficiaries of immunity or plea agreements. We conclude that the omission of the instruction concerning the guilty plea of a co-defendant was error; that the failure of the charge taken as a whole to express the substance of the four other requested instructions prevents us from relying on the testimony of the cooperating witnesses to support a finding of no prejudice; and that the judgment of conviction must therefore be vacated. Prawl also challenges the omission of certain other charges; alleges a violation of the rule requiring the court to inform counsel of its proposed jury charge in advance; and argues that the court erred in not declaring a mistrial on two occasions. We need not decide whether these arguments furnish additional grounds for vacating the judgment.

## BACKGROUND

In June, 1995, postal inspector Ronald Meesig obtained a search warrant for three Express Mail packages routed from Los Angeles to Buffalo. After discovering that they contained marijuana, he made controlled deliveries, one to addressee Valerie McCoy, and the others to an address where the packages were received by Errol Graham.

McCoy testified that she was (at that time) Prawl's girlfriend, that Prawl had on other occasions arranged for her to receive mailings of parcels containing marijuana for pick up by him, and that as to the shipment that became the subject of a controlled delivery, Prawl had arranged for her to call one "John" to pick it up when it arrived. After her arrest, McCoy agreed to make a controlled delivery to "John," who turned out to be an unsuspecting college student, John Batson. McCoy testified that, as of the time of trial, she had not been charged with any offense, but understood that she remained subject to possible prosecution (as she was).

Batson testified that Prawl lent him a car, and asked him to pick up a package from McCoy, but did not say what the package contained.

Errol Graham and David Sawyers testified that they and Prawl, who were old friends, had worked together to distribute marijuana in Buffalo, and that Prawl supplied the drug from sources in California. Typically, Prawl and Graham would wire money to California, and packages of marijuana would be shipped to them in Buffalo. Graham testified that he and Prawl had arranged eight or nine shipments in this way, including the controlled deliveries.

Graham testified pursuant to a cooperation agreement in which he agreed to plead guilty to one count of conspiracy to possess marijuana, 21 U.S.C. §§ 844(a) and 846. The prosecutor elicited the fact of Graham's guilty plea during direct examination, and read to the jury the information in which

Graham was charged. At the time of trial, Graham faced a deportation order but had not yet been sentenced. Sawyers had not been charged.

At the close of the evidence, Judge Elfvin conducted a charge conference. Prawl's lawyer asked whether Judge Elfvin intended to give the jury nine proposed instructions counsel had previously submitted.[1] One of those requested charges, drawn from the reference work, 1 Leonard B. Sand *et al.*, *Modern Federal Jury Instructions* Instruction 7–10, at 7–46 (1998), was the following:

### Government Witness—Not Proper To Consider Guilty Plea

You have heard testimony from a government witness who pled guilty to charges arising out of the same facts as this case. You are instructed that you are to draw no conclusions or inferences of any kind about the guilt of the defendant on trial from the fact that a prosecution witness pled guilty to similar charges. That witness' decision to plead guilty was a personal decision about his own guilt. It may not be used by you in any way as evidence against or unfavorable to the defendant on trial here.

The ensuing colloquy between the court and Prawl's lawyer imperfectly disclosed the court's intentions regarding the charge. One could read the exchange to indicate that the court would deliver all nine requested instructions in substance. Certainly, the court did not reject them.

In particular, the transcript includes the following exchange on the requested instruction concerning Graham's guilty plea:

Mr. Humann [Prawl's attorney]: ... There was a, on page nine of mine, Judge, Errol Graham pled guilty to crimes arising out of this incident and I think I'm entitled to have the jury told that they * * * [c]annot consider the fact that he pled guilty to a piece of paper that alleges he conspired

with my client, that's no evidence against my client.

The Court: Oh no—I'll tell them they have to find the involvement by the particular individual, Mr. Prawl.

The court did not provide counsel with a copy of the charge it intended to deliver.

During closing arguments, Prawl's lawyer alluded to requested instructions. At one point, he advised the jury that "the Judge will give you all kinds of tools for" evaluating witnesses' credibility; at another point, he told the jury that the judge would charge on how to assess the credibility of a felon.

When the court delivered the charge, none of the nine instructions at issue on appeal were given verbatim. Elements of some of the instructions were incorporated into a general credibility charge; others were omitted altogether.

After the charge, the court solicited any objections in writing. Defense counsel handed up a note reminding the court about the nine requested instructions, and the Judge then supplemented his charge as follows:

Mr. Humann has handed up to me, already been covered I think adequately, but I will say and I think it's obvious to you and more so in this case than probably any other that believability of witnesses and evidence is a great factor in this case. You will be able to deal with that out of listening to the witnesses, having watched their demeanor, having known their background and out of your own experiences in life.

After excusing the jury, the judge told defense counsel that he had "looked at [the nine requested instructions] again and capsulized the matter in this aspect of believability which is present, as an issue in this case more so than in many cases." Defense counsel emphasized that he nonetheless had a "particular problem" with the charge because

---

1. The requested instructions, all from 1 Leonard B. Sand *et al.*, *Modern Federal Jury Instructions* (1998), were: Accomplices Called by the Government (Instruction 7–5, at 7–17 to 7–18), Informal Immunity of Government Witness (Instruction 7–9, at 7–33), Government Witness—Not Proper To Consider Guilty Plea (Instruction 7–10, at 7–46), Codefendant's Plea Agreement (Instruction 7–11, at 7–49), Impeachment by Felony Conviction—Non–Defendant (Instruction 7–12, at 7–53), Government Informers (Instruction 7–14, at 7–61), Law Enforcement Witness (Instruction 7–16, at 7–71), Prior Perjury (Instruction 7–18, at 7–74), and Impeachment by Prior Inconsistent Statement (Instruction 7–19, at 7–76).

"I relied on the fact that I thought the Court was going to give the instructions, as I set forth in, I think for the record, I should say I asked the Court to give." The judge responded that he never "give[s] word for word what are requested, even though I say, you know, that this will be in there. It's covered in substance and in my words in my charge." Although the judge had not advised defense counsel of that practice, he expressed confidence that he had done so in other cases in which the same lawyer had appeared.

Defense counsel reiterated that the "specifics" of the instructions were significant, and began going through them one by one, but the court stopped him and noted counsel's exception to the charge. After two hours of deliberations, the jury convicted Prawl on four counts[2] and acquitted him of a simple possession count.

## DISCUSSION

### A. Co–Defendant's Guilty Plea

We will vacate a conviction on account of a missing requested instruction if (1) the requested instruction was legally correct; (2) it "represents a theory of defense with basis in the record that would lead to acquittal"; and (3) "the theory is not effectively presented elsewhere in the charge." *See United States v. Vasquez*, 82 F.3d 574, 577 (2d Cir. 1996). We have already held that when there is a basis for an instruction concerning a co-defendant's guilty plea, an appropriate instruction must be given if requested, and that "[a] ruling of reversible error must follow unless we conclude there existed no reasonable possibility of prejudice." *United States v. Ramirez*, 973 F.2d 102, 105 (2d Cir.1992) (internal quotation marks omitted) (quoting *United States v. Mackey*, 915 F.2d 69,75 (2d Cir.1990)); *see also United States v. Toliver*, 541 F.2d 958, 967 (2d Cir.1976) (noting importance of instruction on this subject); *United States v. Light*, 394 F.2d 908, 914 (2d Cir.1968) (same); *United States v. Kelly*, 349 F.2d 720, 767 (2d Cir.1965) (same).

A limiting instruction is justified when evidence—such as the guilty plea of a testifying co-defendant—is admissible for a limited purpose but might also be considered for a purpose that is impermissible. *See* Fed.R.Evid. 105. A co-defendant's guilty plea may be admissible to impeach a government witness, or may upon occasion be brought out on the government's direct examination in order to anticipate and defuse a cross-examiner's effort to impeach credibility on that basis. *See, e.g., Government of Virgin Islands v. Mujahid*, 990 F.2d 111, 115 (3d Cir.1993). When a plea is introduced for any proper reason, however, the district court, when asked, should instruct the jury that the co-defendant's plea may not be considered as evidence of the defendant's guilt. Such "[a]n instruction is necessary because admission of a co-defendant's guilty plea can be extremely prejudicial to the defendant, given the natural human tendency to assume that if an aider and abettor is guilty, the principal must also be guilty." *Id.* at 116.

The government does not dispute that the charge requested by Prawl was legally sound, but advances several justifications for the court's refusal to deliver the charge in this case.

First, the government argues that the charge was unsupported by the record because Graham was charged in an information, and was therefore not Prawl's co-defendant on the same indictment. We reject the distinction. Graham testified at trial that he had been charged in connection with receiving a package on behalf of Prawl, and the information charging Graham—which the prosecution read to the jury—named Prawl as Graham's co-conspirator. The prosecution's choices in framing the charging instruments cannot control the availability of this charge.

Next, the government argues that the substance of the omitted instruction was adequately conveyed in a passage telling jurors

---

**2.** The counts of conviction were: conspiracy to possess with intent to distribute marijuana, 21 U.S.C. §§ 841(a)(1) and 846; attempt to possess with intent to distribute marijuana, 21 U.S.C. §§ 841(a)(1) and 846, 18 U.S.C. § 2; possession of marijuana with intent to distribute, 21 U.S.C. § 841(a)(1), 18 U.S.C. § 2; and unlawful use of a communication facility in committing a felony drug crime, 21 U.S.C. § 843(b), 18 U.S.C. § 2.

to "find and declare the guilt, or lack of guilt, of only Mr. Prawl," no one else. The referenced language properly focuses the inquiry on Prawl's guilt, but it does not warn against inferring Prawl's guilt from Graham's guilty plea. *See* Sand *et al.* ¶ 7.01, at 7–46 (noting that while the instruction on a co-defendant's guilty plea is an "amplification" of the instruction advising jury to consider defendant's guilt alone, it nonetheless should be given when codefendant testifies after pleading guilty).

■ The government relies on another instruction as an adequate substitute for the requested charge:

> In determining whether a conspiracy existed, you should consider the acts and declarations of all of the alleged participants. However, in determining whether Mr. Prawl or any other person was a member of any conspiracy, you should consider only his own acts and statements. He cannot be bound by the acts or declarations of the other participants until it has been established, beyond a reasonable doubt, that he was a member of the conspiracy.

Graham's guilty plea can be characterized as an "act[ ] or declaration[ ]" of a co-conspirator, but this charge is no proxy for the requested instruction because it would *allow* the jury to consider Graham's guilty plea in assessing Prawl's guilt as soon as Graham's membership in the conspiracy is established. The point of the requested charge, however, is that the jury may *never* consider Graham's guilty plea as evidence of Prawl's guilt.

■ When Prawl's counsel protested the omission of his requested instructions, the court responded that the charges were adequately covered by the court's original and supplemental charges on witness credibility. Whether or not the court's instructions on credibility covered the ground of certain other requested charges, these instructions on credibility could not replace the requested instruction about a co-defendant's guilty plea, which concerns the limited purpose of certain evidence, not the credibility of witnesses. *See Mujahid,* 990 F.2d at 116.

■ Finally, the government argues that even if the requested instruction had a basis in the record and even if no adequate substitute charge was delivered, Prawl fails to show a reasonable possibility of prejudice. The government thereupon catalogs all the inculpatory evidence in the case aside from Graham's testimony.

Although Graham was the government's key witness, the government demonstrates that other damaging and corroborative evidence was elicited from law enforcement witnesses, and (most significantly) from McCoy and Sawyers. However, McCoy and Sawyers were also cooperating witnesses, and Prawl advances sound arguments that the charge as a whole insufficiently alerted the jury to the reasons one may treat their testimony with skepticism as well.

We conclude that the erroneous refusal to charge on Graham's guilty plea entailed a "reasonable possibility of prejudice," notwithstanding inculpatory testimony by cooperating witnesses McCoy and Sawyers, because the charge as a whole insufficiently alerted the jury to the credibility issue inherent in the testimony of the cooperating witnesses.

## B.  Other Charges

Prawl requested eight other pattern jury charges, all of which he argues were omitted and would require vacatur of his conviction. We find it unnecessary to address four of these charges (Impeachment by Felony Conviction—Non–Defendant, Law Enforcement Witness, Prior Perjury, and Impeachment by Prior Inconsistent Statement). The four remaining requested charges (Accomplices Called by the Government, Informal Immunity of Government Witness, Codefendant's Plea Agreement, and Government Informers) bear upon the testimony of all the government's chief witnesses, and reflect the same concern: that the jury should carefully scrutinize the testimony of persons who might have something to gain by falsely inculpating the defendant.

These four proposed charges—edited to emphasize the language particularly favorable to the criminal defendant—are set out in

the margin.[3]

■■■■ District courts are under no obligation to give requested charges word for word, *see United States v. Boonphakdee*, 40 F.3d 538, 541 (2d Cir.1994), and there is "no talismanic formula" for an instruction on accomplice testimony, *see United States v. Santana*, 503 F.2d 710, 716 (2d Cir.1974). Moreover, these four charges in a row contain some repetitive matter. A court could easily conclude that delivery of all four in so many words is unnecessary, or overkill. But we conclude that a defendant who makes one or

more of these requests is entitled to a charge that identifies the circumstances that may make one or another of the government's witnesses particularly vulnerable to the prosecution's power and influence, and that specifies the ways (by catalog or example) that a person so situated might be particularly advantaged by promoting the prosecution's case.

■■■■ The four proposed charges did that. An amalgam, reframing, or distillation of the same ideas would have sufficed. But the charge that was delivered did not invite focus

### 3. Accomplices Called by the Government

You have heard witnesses who testified that they were actually involved in planning and carrying out the crime(s) charged in the indictment....

....

... [A]ccomplice testimony is of such nature that it must be scrutinized with great care and viewed with particular caution when you decide how much of that testimony to believe.

....

You should ask yourselves whether these so-called accomplices would benefit more by lying, or by telling the truth. Was their testimony made up in any way because they believed or hoped that they would somehow receive favorable treatment by testifying falsely? Or did they believe that their interests would be best served by testifying truthfully? If you believe that the witness was motivated by hopes of personal gain, was the motivation one which would cause him to lie, or was it one which would cause him to tell the truth? Did this motivation color his testimony?

Sand *et al.*, Instruction 7–5, at 7–17 to 7–18.

### Informal Immunity of Government Witness

You have heard the testimony of a witness who has been promised that in exchange for testifying truthfully, completely, and fully, he will not be prosecuted for any crimes which he may have admitted either here in court or in interviews with the prosecutors. This promise was not a formal order of immunity by the court, but was arranged directly between the witness and the government.

....

... [T]he testimony of a witness who has been promised that he will not be prosecuted should be examined by you with greater care than the testimony of an ordinary witness. You should scrutinize it closely to determine whether or not it is colored in such a way as to place guilt upon the defendant in order to further the witness' own interests; for, such witness, confronted with the realization that he can win his own freedom by helping to convict another, has a motive to falsify his testimony. Such testimony should be received by you with suspicion and you may give it such weight, if any, as you believe it deserves.

*Id.* Instruction 7–9, at 7–33.

### Codefendant's Plea Agreement

In this case, there has been testimony from a government witness who pled guilty after entering into an agreement with the government to testify. There is evidence that the government agreed to dismiss some charges against the witness and agreed not to prosecute him on other charges in exchange for the witness' agreement to plead guilty and testify at this trial against the defendant. The government also promised to bring the witness' cooperation to the attention of the sentencing court.

....

... [Y]ou should bear in mind that a witness who has entered into such an agreement has an interest in this case different than any ordinary witness. A witness who realizes that he may be able to obtain his own freedom, or receive a lighter sentence by giving testimony favorable to the prosecution, has a motive to testify falsely. Therefore, you must examine his testimony with caution and weigh it with great care. If, after scrutinizing his testimony, you decide to accept it, you may give it whatever weight, if any, you find it deserves.

*Id.* Instruction 7–11, at 7–49.

### Government Informers

There has been evidence introduced at trial that the government used an informer in this case....

... [W]here an informer testifies, as he did here, his testimony must be examined with greater scrutiny that the testimony of an ordinary witness. You should consider whether he received any benefits or promises from the government which would motivate him to testify falsely against the defendant. For example, he may believe that he will only continue to receive these benefits if he produces evidence of criminal conduct.

If you decide to accept his testimony, after considering it in light of all the evidence in this case, then you may give it whatever weight, if any, you find it deserves.

*Id.* Instruction 7–14, at 7–61.

on individual predicaments of the witnesses, or mention the incentives that follow from certain transactions with the government. Instead the charge lumped these considerations with the most amorphous idea of self-interest:

> [Y]ou may take into consideration in evaluating the testimony, the demeanor of the individual in the witness chair and the interest or lack of interest which he or she has in the outcome of the case.
>
> ... The testimony of a witness who provides evidence against the defendant hoping for immunity from or mitigation of punishment or for vindication or for other personal advantage must be examined and weighed by you with great care. You must determine whether such witness's testimony has been materially affected by any such interest.

The supplemental charge did the same:

> I think it's obvious to you and more so in this case than probably any other that believability of witnesses and evidence is a great factor in this case. You will be able to deal with that out of listening of the witnesses, having watched their demeanor, having known their background and out of your own experience in life.

We need not decide whether the foregoing charge is error that would alone justify vacating the judgment on a showing of prejudice. But we hold that the infirmities of this charge, bearing as it does upon the testimony of McCoy and Sawyers, defeats the government's reliance on their testimony to establish a lack of prejudice ensuing from the omission of the charge on Graham's guilty plea.

## C. Rule 30

The relevant portions of Rule 30 are as follows:

> At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests.... *The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury.* ...

No party may assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which that part objects and the grounds of the objection.

Fed.R.Crim.P. 30 (emphasis added).

The purpose of the notice requirement is to allow "counsel to conform their arguments to the law as it will thereafter be presented by the judge to the jury." *United States v. Lyles,* 593 F.2d 182, 186 (2d Cir. 1979); *see also* 2 Charles Alan Wright, *Federal Practice and Procedure* § 482, at 685 (2d ed.1982). "Clearly this purpose is frustrated if the judge, after informing counsel of his proposed charge, then changes the charge after the summations are completed." *Lyles,* 593 F.2d at 186.

We have "strongly encourage[d]" district judges to provide counsel with a written copy of its planned charge ahead of time to give them notice and an "adequate opportunity to register their objections." *See United States v. Birbal,* 62 F.3d 456, 459 n. 1 (2d Cir.1995). The judgment is being vacated for other sufficient reasons. We therefore need not decide whether Rule 30 was violated in this case or whether, if so, "the defendant can show that he was substantially misled in formulating his [closing] arguments or otherwise prejudiced," a necessary predicate to achieving a new trial on a Rule 30 violation. *See United States v. Crozier,* 987 F.2d 893, 900 (2d Cir.1993) (internal quotation marks omitted) (quoting *United States v. Eisen,* 974 F.2d 246, 256 (2d Cir.1992)).

## D. Mistrial Motions

Prawl made two mistrial motions. The first motion was occasioned when a government agent accidentally implied that Prawl was on probation, despite a stipulation barring such evidence. The second was occasioned when the prosecutor asked Prawl's wife if she was aware that Prawl had been shot. At oral argument, the government abandoned any justification of that question. We need not decide whether the district court abused its discretion in refusing to declare a mistrial in either instance, because the judgment is vacated for other reasons,

and because neither circumstance is likely to recur at a retrial.

## CONCLUSION

For the aforementioned reasons, Prawl's conviction is vacated and the case is remanded to the district court for further proceedings.