**UNITED STATES of America,**
**Appellee,**

v.

**Derek A. VAUGHN, Zaza Leslie Lindo,**
**Defendants–Appellants.**

**Docket No. 04–5136 CR(L),**
**04–6288 CR(CON).**

United States Court of Appeals,
Second Circuit.

Argued: Sept. 23, 2005.

Decided: Dec. 1, 2005.

Paul S. Brenner, New York, NY, for Defendant–Appellant Derek A. Vaughn.

Edward S. Panzer (Robert A. Culp, on the brief), New York, NY, for Defendant–Appellant Zaza Leslie Lindo.

Vincent Tortorella, Assistant United States Attorney (David N. Kelley, United States Attorney for the Southern District of New York, John M. Hillebrecht, Assistant United States Attorney, of counsel), New York, NY, for the Appellee.

Before: NEWMAN, SOTOMAYOR, Circuit Judges, and DANIELS, District Judge.*

SOTOMAYOR, Circuit Judge.

Defendants-appellants Derek A. Vaughn and Zaza Leslie Lindo appeal from judgments entered on November 10, 2004, and September 23, 2004, respectively, in the District Court for the Southern District of New York (Jones, J.) sentencing Vaughn principally to 97 months' imprisonment and Lindo to 121 months' imprisonment for conspiring to distribute at least fifty kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 846. In a concurrently filed summary order, we address the appellants' challenges to the district court's ruling pursuant to Fed. R.Evid. 404(b) and its application of the Sentencing Guidelines ("the Guidelines").

* The Honorable George B. Daniels, United States District Judge for the Southern District of New York, sitting by designation.

Here, we reject appellants' remaining contentions and hold that: (1) the district court's jury instruction about the cooperating witness adequately conveyed to the jury that witness's interest in the case and his possible motive to testify falsely and that *United States v. Prawl,* 168 F.3d 622 (2d Cir.1999) is not to the contrary; (2) the retroactive application of the remedial opinion in *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), does not violate the *ex post facto* principle of the Due Process Clause of the Fifth Amendment; (3) after *Booker,* district courts may continue to find facts relevant to sentencing by a preponderance of the evidence without violating the Due Process Clause; (4) after *Booker,* district courts may also continue to take into account acquitted conduct when sentencing defendants without violating the Due Process Clause; and (5) district courts may sentence a defendant to a term of imprisonment greater than a statutory minimum for a drug amount not found by a jury.

## BACKGROUND

Appellants were charged in a one-count information with conspiring to distribute at least 100 kilograms of marijuana, in violation of 21 U.S.C. § 841(b)(1)(B). Winston Barnett, a co-conspirator who was present at a Manhattan Mini–Storage facility to receive a shipment of marijuana for delivery to a locker rented to the appellants, testified at trial as a cooperating witness. After the close of evidence, the district court judge[1] gave the following jury instruction:

There has been evidence that Winston Barnett, who testified at this trial, lied under oath at another proceeding. The testimony of Winston Barnett should be viewed cautiously and weighed with

great care. However, it is for you to decide how much of his testimony, if any, you wish to believe.

You have heard testimony about an agreement between the government and a witness, Winston Barnett. It is no concern of yours why the government made an agreement with Winston Barnett. Your sole concern is whether Winston Barnett has given truthful testimony here in this courtroom before you. In evaluating the testimony of Winston Barnett, you should ask yourselves whether he would benefit more by lying or by telling the truth. If, after scrutinizing his testimony, you decide to accept it, you may give it whatever weight, if any, you find it deserves.

The jury convicted both defendants. In response to a special interrogatory, the jury found that the prosecutor had proved beyond a reasonable doubt that appellants' conduct involved at least fifty kilograms but not more than 100 kilograms of marijuana. At sentencing, the district court found by a preponderance of the evidence that appellants' conduct involved 544 kilograms of marijuana, the quantity of the shipment to the storage facility. After finding that a two-level enhancement under U.S.S.G. § 2D1.1(b)(1) for gun possession was appropriate, the district court sentenced appellants in conformity with 21 U.S.C. § 841(b)(1)(C), for which there is no mandatory minimum sentence and a maximum sentence of twenty years' imprisonment.

## DISCUSSION

### 1. *Cooperating Witness Instruction*

Appellants contend that the district court erred by failing to instruct the jury more specifically on the interest of a co-

---

1. The Honorable Samuel Conti, United States District Judge for the Northern District of California, sat by designation for the trial but did not preside at sentencing.

conspirator who testifies for the prosecution. We disagree and find that the district court's instruction, viewed in the context of the arguments defense counsel made at trial, adequately conveyed to the jury the cooperating witness's interest in the case and his possible motivation to testify falsely.

A defendant is entitled to have his theory of the case fairly submitted to the jury, as long as it has some foundation in the evidence. *United States v. Alfonso–Perez*, 535 F.2d 1362, 1365 (2d Cir.1976). This includes a defendant's theory that the government's witnesses are lying. *Id.* An appellant bears the burden of showing that a requested instruction accurately represented the law and that, in light of the entire charge actually given, the appellant was prejudiced by the failure to give the instruction. *United States v. Dove*, 916 F.2d 41, 45 (2d Cir.1990). We review the propriety of a jury instruction *de novo*. *United States v. Abelis*, 146 F.3d 73, 82 (2d Cir.1998).

The district court commenced its instruction on the credibility of witnesses in this case with a general "interested witness" charge, telling the jury to "consider ... the witness' relationship to the government or the defendants [and his or her] interest, if any, in the outcome of the case." Thereafter, the court specifically noted that the cooperator's testimony had to be "viewed cautiously and weighed with great care" because the cooperator had lied under oath in another proceeding. Having reminded the jury of Barnett's agreement with the government, the court instructed the jury to assess "whether he would benefit more by lying or by telling the truth." Defense counsel had requested a more extensive cooperating witness charge than that ultimately given by the court.[2] The parties, however, drew attention to Barnett's cooperation agreement and his motive to lie in their summations. The government, in its summation, rhetorically asked the jury whether, in light of that agreement, "he ha[d] a motive to lie, or [ ] a motive to tell the truth." Moreover, defense counsel argued during cross-examination and summation that Barnett's testimony should receive careful scrutiny, stating that "the government marrie[d] ... Barnett" and that "[t]he government will have gone to bat for him." Defense counsel further argued that "[e]verything that [Barnett] did ... was fake and fraudulent ... If he did all that—and he did all

**2.** Defense counsel requested the following instruction:

In this case, there has been testimony from a government witness who is testifying pursuant to an agreement with the government where the government has agreed to move for a reduction of sentence for said witness. There is evidence that the government agreed to move for a reduction of sentence for witness and agreed not to prosecute him on other charges in exchange for the witnesses [sic] agreement to testify at this trail [sic] against defendant. The government also promised to bring the witness [sic] cooperation to the attention of the sentencing court.

The government is permitted to enter into this kind of agreement. You, in turn, may accept the testimony of such a witness and convict the defendant on the basis of this testimony alone, if it convinces you of the defendant's guilt beyond a reasonable doubt.

However, you should bear in mind that a witness who has entered into such an agreement has an interest in this case different than any ordinary witness. A witness who realizes that he may be able to obtain his own freedom, or receive a lighter sentence by giving testimony favorable to the prosecution, has a motive to testify falsely. Therefore, you must examine his testimony with caution and weigh it with great care. If, after scrutinizing his testimony, you decide to accept it, you may give it whatever weight, if any, you find it deserves.

that—why did [the government] make this cooperation agreement with him?"

■ The better course would have been for the trial judge to more specifically caution the jury to scrutinize the testimony of the cooperating witness with an eye to his motivation for testifying and what he stood to gain by testifying. We find, however, that the jury charge as a whole and counsel's arguments that the prosecution had "married" and "gone to bat for" Barnett, as well as the government's summation, fairly put the issue of the cooperator's credibility to the jury. *See United States v. Velez,* 652 F.2d 258, 261 n. 5 (2d Cir. 1981) (suggesting that the district court's omission of a cooperating witness instruction was not prejudicial in light of defense counsel's summation); *United States v. Santana,* 503 F.2d 710, 716 (2d Cir.1974) (finding no error where the court instructed the jury to scrutinize the testimony of cooperating witnesses and where defense counsel, through cross-examination and summation, argued that the cooperating witnesses had motives to lie).

Appellants rely on *United States v. Prawl,* 168 F.3d 622 (2d Cir.1999), but *Prawl* does not compel a different result. In that case, we found reversible error where the district court neglected to charge the jury that it could not consider the guilty plea of an alleged co-conspirator as evidence of the defendant's guilt. *Id.* at 627. Moreover, although the defendant had requested a number of proposed charges on accomplice witness testimony, the district court gave only the following concise instruction:

> The testimony of a witness who provides evidence against the defendant hoping for immunity from or mitigation of punishment or for vindication or for other personal advantage must be examined and weighed by you with great care. You must determine whether such wit-

ness's testimony has been materially affected by any such interest.

*Id.* at 629. We did not determine in *Prawl* that its accomplice-witness charge, or the failure to give any of the accomplice-testimony instructions requested by defense counsel, required reversal independently. Rather, we held that, in light of the charge that was given, the government could not rely on the testimony of the cooperating witnesses in establishing "a lack of prejudice ensuing from the omission of the charge on [the alleged co-conspirator's] guilty plea." *Id.* Our holding in *Prawl* did not sweep broadly, and we do not read it, as defendants contend, to establish a rule that district courts must do more than convey to the jury that the testimony of cooperating witnesses should be subjected to scrutiny in terms of their possible motivations, particularly where defense counsel argues to the jury that a cooperating witness's interest in the case bears on his or her credibility. *See Santana,* 503 F.2d at 715–16.

■ As we recognized in *Prawl,* "[d]istrict courts are under no obligation to give requested charges word for word, and there is no talismanic formula for an instruction on accomplice testimony." 168 F.3d at 628 (internal citations and quotation marks omitted). We went on to opine in *Prawl,* however, that a defendant "is entitled to a charge that identifies the circumstances that may make one or another of the government's witnesses particularly vulnerable to the prosecution's power and influence, and that specifies the ways . . . that a person so situated might be particularly advantaged by promoting the prosecution's case." *Id.* To the extent that our statement in *Prawl* is susceptible to a capacious interpretation, we limit that case's reach here, holding that district courts need only fairly put the issue of a cooperating witness's possible motivations

to the jury for its consideration and need not over-emphasize the obvious—that cooperators may have an interest in currying favor with the prosecutor that could affect the substance of their testimony. As long as district courts intelligibly identify a cooperating witness's possible motivations for the jury's consideration, the cautionary charge given to the jury regarding a cooperating witness's testimony is sufficient. We reiterate that we review a district court's accomplice-testimony instruction in light of the charge in its entirety and the arguments made at trial.

A more detailed accomplice or cooperating witness instruction would not have been improper. To the contrary, it would have been prudent. The district court was not required, however, to give the defendants' requested charge. The instruction here, viewed in light of the charge as a whole and the arguments made at trial, adequately presented the defendants' position.

### 2. *Retroactive Applicability of the* Booker *Remedial Opinion*

■ Appellants claim that the application of the remedial holding of *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) (making the Guidelines advisory), violates the *ex post facto* principle embedded in due process by exposing them to sentencing enhancements not authorized by the jury's verdict. They claim that the *Booker* remedy, which authorizes judges to impose a sentence anywhere within an applicable statutory range, would expose them to greater sentences than they would face under Justice Stevens' opinion in *Booker* alone. Appellants essentially seek the benefit of retroactive application of Justice Stevens' opinion in *Booker*, holding that mandatory Guidelines violate the Sixth Amendment, *id.* at 755–56, while avoiding resentencing

under Justice Breyer's remedial holding. Appellants' claim fails for two reasons.

First, in *Booker*, the Supreme Court expressly stated that both holdings should be applied to then-pending cases on direct review. 125 S.Ct. at 769. Second, while the Supreme Court noted in *Rogers v. Tennessee*, 532 U.S. 451, 121 S.Ct. 1693, 149 L.Ed.2d 697 (2001), that "limitations on *ex post facto* judicial decisionmaking are inherent in the notion of due process," *id.* at 456, 121 S.Ct. 1693, the Court anchored its analysis in "core concepts of notice, foreseeability, and, in particular, the right to fair warning as those concepts bear on the constitutionality of attaching criminal penalties to what previously had been innocent conduct." *Id.* at 459, 121 S.Ct. 1693. Just as appellants had fair warning that their conduct was criminal, they also had fair warning of the potential penalties they faced for conspiring to distribute marijuana. The relevant maximum applicable to the drug quantity found by the jury at the time the appellants committed their offense was the statutory maximum of twenty years' imprisonment. 21 U.S.C. § 841(b)(1)(C). Appellants also had fair notice at that time that their sentences could be based on a judicial determination of the quantity of marijuana involved in their offense as long as the sentences were below the relevant statutory maximum. The sentences imposed by the district court were below the statutory maximum and within the range prescribed by the Guidelines for the quantity of drugs the court determined to have been involved in the appellants' crime. Even under pre-*Booker* law, defendants faced the possibility of sentences anywhere within the applicable statutory range. *See United States v. Garcia*, 240 F.3d 180, 183–84 (2d Cir. 2001) (holding that the prohibition on judicial fact-finding in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), does not apply to

Guidelines calculations within the statutory range). We therefore find nothing improper in the application of Justice Breyer's *Booker* opinion to cases pending on direct review and join the First, Fifth, Seventh, Ninth, and Eleventh Circuits in rejecting an *ex post facto* claim based on the remedial holding in *Booker*.[3] *See United States v. Lata,* 415 F.3d 107 (1st Cir.2005); *United States v. Scroggins,* 411 F.3d 572 (5th Cir.2005); *United States v. Jamison,* 416 F.3d 538 (7th Cir.2005); *United States v. Dupas,* 417 F.3d 1064 (9th Cir.), *amended by* 419 F.3d 916 (9th Cir. 2005); *United States v. Duncan,* 400 F.3d 1297 (11th Cir.2005).

3. *Standard of Proof for Sentencing Factors under the Due Process Clause*

■ Appellants argue that, on remand, they are entitled to be resentenced without any enhancements. Relying on the Supreme Court's statement in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), that the "right to have the jury verdict based on proof beyond a reasonable doubt" is "well founded," *id.* at 478, 120 S.Ct. 2348, appellants contend that the Due Process Clause of the Fifth Amendment requires that a defendant be sentenced only in accordance with facts proved beyond a reasonable doubt. We do not agree.

Before *Booker,* this Court rejected the argument that due process requires that sentencing factors be proved by more than a preponderance of the evidence. *See, e.g., United States v. Cordoba–Murgas,* 233 F.3d 704, 709 (2d Cir.2000) (remanding to the district court to determine relevant

conduct for sentencing purposes by a preponderance of the evidence); *United States v. Guerra,* 888 F.2d 247, 251 (2d Cir.1989) (holding that the preponderance of the evidence standard provides the requisite due process in determining relevant conduct pursuant to the Sentencing Guidelines). Nothing in *Booker* or its predecessors undermines our binding precedent. In fact, this Court recently held that "[j]udicial authority to find facts relevant to sentencing by a preponderance of the evidence survives *Booker,*" citing our earlier decision in *United States v. Crosby,* 397 F.3d 103 (2d Cir.2005), for the proposition that district courts remain statutorily obliged to consider the Guidelines in the same manner as before *Booker. United States v. Garcia,* 413 F.3d 201, 220 n. 15 (2d Cir.2005); *cf. United States v. Gonzalez,* 407 F.3d 118, 125 (2d Cir.2005) (noting that district courts retain the authority post-*Booker* "to resolve disputed facts by a preponderance of the evidence when arriving at a Guidelines sentence").

We reiterate that, after *Booker,* district courts' authority to determine sentencing factors by a preponderance of the evidence endures and does not violate the Due Process Clause of the Fifth Amendment. Appellants' claim is therefore without merit.

4. *Acquitted Conduct*

Before *Booker,* the Supreme Court held that the Double Jeopardy Clause permitted a sentencing judge to use acquitted conduct in determining a defendant's Guidelines range. *United States v. Watts,* 519 U.S. 148, 157, 117 S.Ct. 633, 136

---

3. Because we hold that retroactive application of the *Booker* remedial opinion to cases pending on direct review does not violate the *ex post facto* principle of the Due Process Clause, we find no merit in appellants' claim that the Double Jeopardy Clause compels resentencing solely in accordance with the facts

found by the jury. As we hold in this case, before and after *Booker,* the government bore the burden of proving facts relevant to sentencing to the district court judge by a preponderance of the evidence. Whether or not the government carried that burden, appellants have not twice been placed in jeopardy.

L.Ed.2d 554 (1997). Appellants claim that the rulings in *Booker* and its predecessors preclude sentencing on the basis of acquitted conduct. We again disagree.

■ Justice Stevens discussed *Watts* in his *Booker* opinion, stating that it did not preclude the Court's application of *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), to the federal sentencing guidelines and that it was not inconsistent with the Sixth Amendment analysis in *Booker*. 125 S.Ct. at 754 & n. 4. While we have not had occasion to consider whether *Watts* survives *Booker*, both parties have invoked our recent decision in *United States v. Williams*, 399 F.3d 450 (2d Cir.2005). In that case, the jury acquitted the defendant of willful conduct while convicting him of acting "knowingly and recklessly." *Id.* at 452. At sentencing, the district court declined to make a discretionary downward departure under the Guidelines, taking into account its finding that the defendant had acted deliberately. *Id.* at 453. Because the district court had not used acquitted conduct to support a mandatory calculation under the Guidelines, we did not reach in *Williams* whether *Watts* survives *Booker*. In the instant case, after the jury returned a special verdict finding that the prosecution had proven beyond a reasonable doubt that the appellants' conduct involved at least fifty kilograms of marijuana but not more than 100 kilograms, the district court found by a preponderance of the evidence, based on the evidence adduced at trial, that the appellants' conduct involved 544 kilograms of marijuana. This case thus squarely presents the question whether, after *Booker*, a district court may sentence a defendant taking into account acquitted conduct. We hold that it may.

As a preliminary matter, we note that Justice Stevens' discussion in *Booker* indicates that *Watts* remains good law and acknowledge the Supreme Court's admonition that Courts of Appeal should continue to follow directly controlling precedent even where that decision appears to rest on reasons rejected in another line of decisions. *See Agostini v. Felton*, 521 U.S. 203, 237–38, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997). In any event, we do not read *Booker* to undermine the continued validity of the ruling in *Watts*.

■ Appellants' argument misses the distinction between elements of an offense and facts relevant to sentencing. Elements of an offense must be tried to a jury, but facts relevant to sentencing may be found by a judge, within the constraints of the Sixth Amendment. We have held that the drug quantities specified in 21 U.S.C. § 841(b) are not mere sentencing factors but elements of aggravated offenses defined by reference to those statutes. *See United States v. Thomas*, 274 F.3d 655 (2d Cir.2001) (en banc). Although we observed in *Thomas* that "the principle of *Apprendi* requires quantity to be charged in the indictment and found by a jury only in cases where the quantity results in a punishment above a statutory maximum," *id.* at 660 n. 3, we nonetheless ruled that "because the quantity of drugs involved in a crime may raise a defendant's sentence above the statutory maximum established in 21 U.S.C. § 841(b)(1)(C), quantity is an element of the offense charged under 21 U.S.C. § 841." *Id.* at 663. Before *Booker*, district courts calculated Guidelines ranges, within the statutory parameters authorized by the jury verdict, after determining facts relevant to sentencing by a preponderance of the evidence. As we have stated recently and reiterate in this opinion, district courts remain statutorily obliged to calculate Guidelines ranges in the same manner as before *Booker* and to find facts relevant to sentencing by a preponderance of the evi-

dence. *See Garcia*, 413 F.3d at 220 n. 15; *Crosby*, 397 F.3d at 112. Consistent with that obligation, district courts may find facts relevant to sentencing by a preponderance of the evidence, even where the jury acquitted the defendant of that conduct, as long as the judge does not impose (1) a sentence in the belief that the Guidelines are mandatory, (2) a sentence that exceeds the statutory maximum authorized by the jury verdict, or (3) a mandatory minimum sentence under § 841(b) not authorized by the verdict. *See United States v. Gonzalez*, 420 F.3d 111, 129 (2d Cir. 2005) (holding that drug quantity is an element of the offense that must be charged in the indictment and proven to a jury beyond a reasonable doubt or admitted by the defendant where the quantity triggers a change in both a mandatory minimum sentence and a maximum sentence because "mandatory minimums operate in tandem with increased maximums").

In the instant case, the information charged appellants with, and the jury acquitted them of, a violation of § 841(b)(1)(B). As a result, the jury acquitted appellants of conduct that would have exposed them to a statutory sentencing range of five to forty years' imprisonment. The jury convicted appellants, however, of conduct that exposed them to a statutory sentencing range of zero to twenty years' incarceration under § 841(b)(1)(C). The district court sentenced appellants within the statutory range authorized by the jury verdict and within the Guidelines range determined in accordance with facts the court found by a preponderance of the evidence.

■■ We emphasize that there is no logical inconsistency in determining that a preponderance of the evidence supports a finding about which there remains a reasonable doubt and join the Seventh, Tenth, and Eleventh Circuits in rejecting a claim

that, after *Booker*, district courts may no longer consider acquitted conduct when sentencing within the statutory range authorized by the jury's verdict. *United States v. Price*, 418 F.3d 771, 788 (7th Cir.2005); *United States v. Magallanez*, 408 F.3d 672 (10th Cir.2005); *Duncan*, 400 F.3d 1297. We remand for resentencing pursuant to *United States v. Fagans*, 406 F.3d 138 (2d Cir.2005), as analyzed in the summary order filed today, because the district court erred in its mandatory application of the Guidelines and appellants objected below. On remand, the court is directed to consider all facts relevant to sentencing it determines to have been established by a preponderance of the evidence as it did pre-*Booker*, even those relating to acquitted conduct, consistent with its statutory obligation to consider the Guidelines. 18 U.S.C. § 3553(a)(4), (5). We restate, however, that while district courts may take into account acquitted conduct in calculating a defendant's Guidelines range, they are not required to do so. Rather, district courts should consider the jury's acquittal when assessing the weight and quality of the evidence presented by the prosecution and determining a reasonable sentence. *See Cordoba–Murgas*, 233 F.3d at 708 (acknowledging that enhancements based on relevant conduct may be excessive when imposed "without regard to the weight of the evidence proving the relevant conduct") (citation omitted); *United States v. Gigante*, 94 F.3d 53, 56 (2d Cir.1996) (holding that, for sentencing purposes, "the preponderance standard is no more than a *threshold* basis for adjustments and departures, and the weight of the evidence, at some point along a continuum of sentence severity, should be considered") (emphasis in original).

5. *Mandatory Minimums*

Appellants further argue that a district court may not sentence a defendant to a

term of imprisonment greater than the statutory minimum for a drug amount not found by a jury, even if the sentence falls below the statutory maximum authorized by the jury verdict.

■ Appellants' theory would impact a district court's authority to impose a sentence where statutory sentencing ranges overlap. Under their approach, a judge could only sentence a defendant to a term of imprisonment within the statutory range authorized by the jury verdict but below the mandatory minimum of an overlapping, higher statutory range. Stated differently, where statutory sentencing ranges overlap and the lower range is found by a jury, appellants contend that the mandatory minimum for the higher range creates a "miniature" maximum within the range authorized by the verdict that limits the sentence a district court may impose. For example, if the jury verdict authorized a statutory sentencing range of zero to twenty years' imprisonment under 21 U.S.C. § 841(b)(1)(C), the district court would be limited by the five-year mandatory minimum sentence of § 841(b)(1)(B) that would be triggered by a drug quantity that was not proven to the jury beyond a reasonable doubt, effectively reducing the authorized range to zero to five years' incarceration. Appellants' argument is without merit.

■ We recognized in *United States v. Gonzalez* that mandatory minimum sentences are triggered only by a drug quantity proven to a jury beyond a reasonable doubt and that defendants convicted on an unquantified drug charge must be sentenced pursuant to § 841(b)(1)(C), which generally provides no mandatory minimum sentence. 420 F.3d at 131. Thus, in cases like this one, where the quantity proven to the jury authorized the district court to sentence defendants pursuant to § 841(b)(1)(C), the mandatory minimum of

§ 841(b)(1)(B) and its corresponding increased maximum simply were not triggered, notwithstanding the fact that the district court judge found the threshold quantity to have been established by a preponderance of the evidence. As a result, the holdings in *Gonzalez* and *Harris v. United States*, 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002), where the Supreme Court found no *Apprendi* violation because the mandatory minimum sentences under the statute at issue in that case increased while the implicit maximum sentence remained constant, do not support appellants' claim.

Moreover, the Supreme Court made clear in *Booker* that when a judge sentences a defendant within the statutory range authorized by the jury verdict and uses advisory Guidelines to calculate that sentence, there is no Sixth Amendment violation. 125 S.Ct. at 757. Here, the district court judge articulated on the record that the defendants were convicted of a § 841(b)(1)(C) offense, acknowledging that she was not bound by the five-year mandatory minimum sentence of § 841(b)(1)(B) in light of the drug quantity established by a preponderance of the evidence. Rather, the district court calculated the applicable Guidelines range based on that quantity and its relevant conduct assessment and sentenced the defendants within the statutory sentencing range authorized by the verdict pursuant to § 841(b)(1)(C). While the district court erred in violation of the Sixth Amendment by applying the Guidelines mandatorily, the same sentence imposed pursuant to advisory Guidelines would not violate the Sixth Amendment.

We also note that Congress, in creating statutory sentencing ranges that overlap to substantial degrees, presumably anticipated that some defendants convicted of crimes involving a specified quantity of

drugs would receive greater sentences than some defendants convicted of crimes involving a larger drug quantity triggering a mandatory minimum sentence. Congress must have been aware, in juxtaposing under § 841(b) statutory sentencing ranges of zero to twenty years, five to forty years, and ten years to life imprisonment that the drug quantity proven to a jury would determine the applicable minimum and maximum sentences but not necessarily any specific sentence to be imposed within an applicable range. Congress must also have been aware that a defendant convicted of a § 841(b)(1)(C) offense could, in some circumstances, receive a sentence exceeding the sentence imposed on a defendant convicted of even a § 841(b)(1)(A) offense, given the substantial overlap between the ranges established by those provisions. In the absence of an identifiable constitutional error, we have neither the authority nor the inclination to revise the statutory framework to create sentencing ranges of zero to five years under § 841(b)(1)(C), five to ten years under § 841(b)(1)(B), and ten years to life under § 841(b)(1)(A).

## CONCLUSION

For the foregoing reasons, and those stated in our summary order filed today, the judgments of conviction of the district court are AFFIRMED, and the case is REMANDED for resentencing.