**UNITED STATES of America, Appellee,**

**v.**

**Andrew CAPOCCIA, Defendant–Appellant.**

**Nos. 06–0670–cr(L), 06–2296–cr(CON).**

United States Court of Appeals, Second Circuit.

Sept. 19, 2007.

Gregory L. Waples, Assistant United States Attorney (Thomas D. Anderson, United States Attorney, James L. Gelber, David V. Kirby, Assistant United States Attorneys, on the brief), District of Vermont, Burlington, Vermont, for Appellee.

Elizabeth L. Tang, Delmar, New York (Thomas A. Zonay, Ford & Zonay, P.C., Woodstock, Vermont, on the brief), for Appellant.

PRESENT: Hon. SONIA SOTOMAYOR, Hon. ROBERT A. KATZMANN, Circuit Judges, Hon. NANCY GERTNER, District Judge.*

***SUMMARY ORDER***

Defendant-appellant Andrew Capoccia appeals from the February 6, 2006 judgment of the district court convicting him, following a jury trial, of thirteen counts of conspiracy, mail and wire fraud, interstate transmittal and receipt of stolen money, and money laundering. Capoccia also challenges the court's October 14, 2005 denial of his motion for a new trial and to dismiss the indictment, and its May 4, 2006 final order of restitution. We assume the parties' familiarity with the underlying facts of the case, its procedural history and the arguments on appeal.

First, Capoccia alleges that the district court erred in denying as untimely and meritless his motion to dismiss the indictment or for a new trial based on the prosecution's allegedly improper removal and nondisclosure of several pages of grand jury transcript. We agree with the district court that the motion, even if timely, lacked merit. The redacted portion of

* The Honorable Nancy Gertner, United States District Judge for the District of Massachusetts, sitting by designation.

the grand jury minutes (in which the prosecutor informed the grand jurors that they would hear future testimony on several issues, including the issue of spending retainer fees, and that they should not "necessarily assume" that spending retainer fees was "improper or illegal or criminal") was not "material either to guilt or to punishment," so the failure to disclose it did not violate *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Moreover, Capoccia cannot show prejudice from the redaction because there is no reasonable probability that the outcome of the trial would have been different had the information been disclosed. *See United States v. Coppa,* 267 F.3d 132, 142 (2d Cir.2001) (holding that evidence is only "material" under *Brady* if "a reasonable probability will exist that the outcome of a trial in which the evidence had been disclosed would have been different"); *Strickler v. Greene,* 527 U.S. 263, 282, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999) (requiring showing of prejudice to make out *Brady* claim). Similarly, dismissal of the indictment is not warranted because Capoccia has not established a "violation of one of the 'few, clear rules which were carefully drafted and approved by this Court and by Congress to ensure the integrity of the grand jury's functions.'" *United States v. Williams,* 504 U.S. 36, 46, 112 S.Ct. 1735, 118 L.Ed.2d 352 (1992) (quoting *United States v. Mechanik,* 475 U.S. 66, 74, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986)). And again, Capoccia has not demonstrated prejudice as a result of the alleged misconduct. *See Bank of Nova Scotia v. United States,* 487 U.S. 250, 255, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988) ("[A] district court exceeds its powers in dismissing an indictment for prosecutorial misconduct not prejudicial to the defendant. . . ."). Finally, we reject Capoccia's contention that permitting a prosecutor to redact erroneously transcribed, non-testimonial material imperils the "very integrity" of the grand jury process.[1]

█ Second, Capoccia argues that the district court denied him due process of law when it failed to question jurors as to whether they had been exposed to publicity about the case after a recess between their empanelment on February 9, 2005, and the commencement of the trial on March 8, 2005. Capoccia admits that he did not object at trial to the court's failure, and so our review ordinarily would be only for plain error, *see United States v. Olano,* 507 U.S. 725, 731, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). Capoccia contends, however, that the error was so severe that it was "structural" and thus requires automatic reversal, *see Neder v. United States,* 527 U.S. 1, 8, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). Under *Neder,* errors are subject to automatic reversal only in a "very limited class of cases" where the "defect affect[s] the framework within which the trial proceeds" in a such a way that it "*necessarily* render[s] a criminal trial fundamentally unfair." *Id.* at 9, 119 S.Ct. 1827. Given that the court admonished the jury after voir dire to ignore any publicity in the case, and that Capoccia admits he has produced no evidence that any juror was in fact tainted by exposure to such publicity, the court's decision not to question the jury again at the start of trial was far from "structural error," or even plain error. Contrary to Capoccia's contention, *United States v. Gaggi,* 811 F.2d 47 (2d Cir.1987), and *United States v. Lord,* 565 F.2d 831 (2d Cir.1977) do not create a rule that a judge must question jurors about

1. Capoccia's reliance on *United States v. Zichettello,* 208 F.3d 72 (2d Cir.2000), is misplaced. That case concerned alterations of a transcript that were (a) by a court, and (b) undisclosed, *id.* at 97, whereas the alteration in the present case was neither by the court nor undisclosed.

publicity after every recess during which the potential for exposure to publicity "existed." Rather, those cases entrust to the trial court's discretion the determination of whether further inquiry is necessary once it has been established that "the coverage has a potential for unfair prejudice." *Gaggi,* 811 F.2d at 51; *see also Lord,* 565 F.2d at 838 ("If the broadcast or article contains no information beyond the evidence in the case, or it the information is clearly innocuous or the possibility of the jury's exposure to it is remote, further inquiry may not be necessary.").

Third, Capoccia challenges the district court's jury charge on a number of grounds. At the outset, we note that the prosecution and defense agreed upon the charge issued to the jury, and defense counsel expressly noted no objection to the charge as given. *See* Tr. March 31, 2005, at 218; Tr. April 4, 2005, at 822. The government argues that if there were any errors in the charge, they were "invited" by Capoccia and he is therefore barred from raising them now. *See United States v. Wellington,* 417 F.3d 284, 290 (2d Cir. 2005) ("[A] defendant cannot complain of an error which he himself invited...."); *United States v. Young,* 745 F.2d 733, 752 (2d Cir.1984) (stating that defendant cannot on appeal complain of a charge that he requested, and that we have been "especially reluctant to reverse for plain error when it is invited" (internal quotation marks omitted)). Capoccia, by contrast, contends that our review should be for plain error. Invited or not, none of the challenged portions of the charge amounted to plain error.

Despite Capoccia's argument that it "erroneously criminalized non-criminal conduct," the court's prefatory instruction on "client money held by an attorney" in context provided only background on the ethical obligations of attorneys with regard to their clients' funds.[2] *See United States v. Weintraub,* 273 F.3d 139, 151 (2d Cir. 2001) ("We do not review portions of the instructions in isolation, but rather consider them in their entirety to determine whether, on the whole, they provided the jury with an intelligible and accurate portrayal of the applicable law.").

The court's failure to re-issue during its closing charge prior limiting instructions on the so-called "background" evidence of misconduct prior to May 2000 and the so-called "noticed" evidence of Capoccia's disbarment and the Attorney General's civil suit was not plain error, because Capoccia did not request that such limiting instructions be given. *See* Fed.R.Evid. 105 (providing for limiting instructions "*upon request*" (emphasis added)); *United States v. Garcia,* 848 F.2d 1324, 1335 (2d Cir.1988), *rev'd on other grounds sub nom. Gomez v. United States,* 490 U.S. 858, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989) (stating that "[t]he timing of Rule 105 limiting instructions with regard to physical evidence is best left to the trial court's discretion" and endorsing view that " '[t]he jury may be instructed either as the [limited] evidence is admitted or as part of the general charge' " (quoting 1 J. Weinstein, Weinstein's Evidence ¶ 105[05], at 105–44 (1986)) (emphasis omitted)).[3]

The court also did not err in failing specifically to instruct the jury that it

2. Capoccia argues that the charge's placement immediately following the court's admonition to "follow the law as I state it to you," supports his claim. But this portion of the charge did not purport to state any "law" the jury should apply.

3. The government alleges that Capoccia was not entitled to the limiting instruction regarding "background" evidence at all, but we need not reach that question here.

should disregard the guilty pleas of Capoccia's co-defendants (a so-called "*Prawl* instruction," *see United States v. Prawl,* 168 F.3d 622, 626 (2d Cir.1999)). It is error not to give such an instruction only when one has been requested, *see id.* ("[W]hen there is a basis for an instruction concerning a codefendant's guilty plea, an appropriate instruction must be given *if requested* ...." (emphasis added)), and Capoccia admits he did not object to the charge as given.[4]

Capoccia's remaining challenges to the jury charge have even less merit: (a) the court's instruction as to Count Two of the indictment very clearly addressed the object of the conspiracy, *see* Tr. April 4, 2005, at 797–803 (instructing the jury that "count two of the second superseding indictment charges Mr. Capoccia with conspiring with others to commit mail fraud, wire fraud, interstate transportation of stolen property and receiving stolen property that had crossed state lines," and subsequently referring to, *inter alia,* "the overt acts charged in the second superseding indictment" and to "unlawful" acts, purposes, agreements, and objectives); (b) the court's Pinkerton charge correctly informed the jury that it could only find Capoccia guilty of a particular substantive crime if it found that a co-conspirator committed that substantive crime, *see* Tr. April 4, 2005, at 819–21 (referring repeatedly to "the substantive crime charged"); *see also United States v. Bala,* 236 F.3d 87, 95 (2d Cir.2000); (c) the court's allegedly improper "expert witness charge" did not describe anyone as an expert, but rather simply explained to the jury that they should accord opinion testimony whatever weight they felt it deserved in light of the witness's qualifications, knowledge, experience, and reasons for testifying, *see* Tr. April 4, 2005, at 790–91; (d) the court explicitly charged the jury that it must find that Capoccia had knowledge that the property was stolen, Tr. April 4, 2005, at 793 ("To meet [its] burden of proof [on the crime of interstate transportation of stolen property] the Government must establish beyond a reasonable doubt .... [*inter alia,* that] at the time of the transportation or transmission the defendant knew the money or securities were stolen, converted, or taken by fraud."), even if he later referred to the crime using a short-hand formulation, *see United States v. Locascio,* 6 F.3d 924, 942 (2d Cir.1993); and (e) the court's usage on two occasions of the phrase "should acquit," rather than "must acquit," was not error because "should" (unlike, for example, "may") was imperative, not hortatory, and the jury's obligation was also clear from context, *see Santos v. New York,* No. 96 Civ. 3660, 1997 WL 282269, at *5 (S.D.N.Y. May 28, 1997) ("[T]he word 'should' conveys to the jury an obligation to acquit, whereas the word 'may' gives the jury the idea that acquittal is merely an option."), *aff'd,* 159 F.3d 1348 (2d Cir.1998); *see also United States v. Ray,* 238 F.3d 828, 835 (7th Cir.2001) (finding the "should" in "should acquit" to be "imperative—not hortatory").

Fourth, Capoccia claims the evidence presented at trial was insufficient to support his conviction on "the crimes charged." A defendant "bears a very heavy burden in challenging the sufficiency of the evidence." *United States v. Amiel,* 95 F.3d 135, 141 (2d Cir.1996). "In reviewing this claim, the court must view the evidence in the light most favorable to the government and construe all possible inferences in its favor." *Id.* (internal quota-

4. The fact that defense counsel had previously submitted such an instruction, but later, as part of its negotiations with the government, approved of a charge omitting the instruction, does not change our analysis.

tion marks omitted). Capoccia has not met his "very heavy burden."

■ Fifth, Capoccia argues that the district court erred in admitting evidence of Capoccia's disbarment and of the New York Attorney General's civil suit against him. This argument lacks merit. The evidence is not, as Capoccia argues, subject to Rule 404(b) because it "arose out of the same transaction or series of transactions as the charged offense, ... [was] inextricably intertwined with the evidence regarding the charged offense, ... [and was] necessary to complete the story of the crime on trial," *United States v. Carboni,* 204 F.3d 39, 44 (2d Cir.2000) (internal quotation marks omitted), and its probity was not substantially outweighed by its prejudice, *see* Fed.R.Evid. 403.

■ Sixth, Capoccia challenges the district court's application of a two-level sentencing enhancement for an "abuse of position of trust" under United States Sentencing Guidelines § 3B1.3. He contends that he was not the clients' attorney, and that they did not entrust him with any discretion over their funds. At a minimum, however, the government adduced sufficient evidence to show that the enhancement was proper with respect to conduct between May 2000, when the Law Centers moved to Vermont, and September 2000, when Capoccia was disbarred. During that time period, Capoccia was a licensed attorney and, according to evidence produced by the government, exercised substantial control over the management and finances of the Law Centers. This unsupervised "professional or managerial discretion" over the funds of the Law Centers' clients, many of whom Capoccia himself had recruited before the move, "contributed in some significant way to facilitating the commission or concealment of the offense," U.S.S.G. § 3B1.3, cmt (n. 1). *See United States v. Allen,* 201 F.3d 163, 166 (2d Cir.2000) (explaining that application of the enhancement depends not on the individual's title, but on "the extent to which the position provides the freedom to commit a difficult-to-detect wrong" (internal quotation marks omitted)); *see also United States v. Sotomayor–Vazquez,* 249 F.3d 1, 19–20 (1st Cir. 2001) ("[A] defendant need not legally occupy a formal 'position of trust,' nor have 'legal control' of an organization, for the enhancement to apply. De facto control, which allows the defendant to exercise the type of discretion contemplated by the enhancement, suffices. The district court found that [the defendant] was for all purposes the 'heart and soul' of [the company], i.e., that he controlled [its] finances. The court also noted [his] role in making decisions for corporations that had direct business relationships with [the company]. In short, the district court found that [the defendant] enjoyed the 'professional or managerial discretion' contemplated by the Guideline." (internal citations omitted)); *United States v. Burridge,* 191 F.3d 1297, 1305 (10th Cir.1999) ("The determination of whether a defendant occupies a position of trust for sentencing purposes does not hinge on whether he or she is technically a fiduciary for purposes of agency law."). Because Capoccia's abuse of trust for that period is clear, it was not error for the district court to apply the enhancement.

■ Seventh, Capoccia raises two objections to the district court's imposition of the restitution order against him. He first alleges that the probation office failed to send notices as required by 18 U.S.C. § 3664(a), (d), and that this deviation demonstrates that, because of the large number of victims, imposing a procedurally correct order was "inescapably impracti-

cal[ ]." "[S]entencing errors not affecting substantial rights are regularly deemed harmless. [This] principle pertains with special force to a sentencing statute ... [whose] primary purpose ... is to protect victims' rights." *United States v. Zakhary,* 357 F.3d 186, 192 (2d Cir.2004) (citation omitted). Capoccia does not explain how his substantial rights have been affected, and it is difficult to see how the alleged error could have done so. Under the circumstances, any error in the district court's procedure would have been certainly harmless. Second, Capoccia claims that in calculating each victim's loss, the court did not account for "how much each client owed for legal services which had been performed." Yet trial testimony established that the Law Centers only earned fees from each client upon settling his or her debt, and did not hold back retainer moneys based on work already done. Tr. March 10 at 152–53. Therefore, at the time the Law Centers went out of business, it owed to those clients who still had money on deposit the entire amount of such money, because it had not yet settled their debts.

Because we affirm Capoccia's convictions on all counts, we need not reach his argument that a reversal of one or some counts of conviction would warrant reversal of the remaining counts because of "prejudicial spillover." We have considered Capoccia's remaining claims and find them to be without merit.

For the foregoing reasons, we AFFIRM the judgment of conviction.