State *v.* Jones

## STATE OF CONNECTICUT *v.* BILLY RAY JONES
## (SC 20261)

Robinson, C. J., and Palmer, McDonald, D'Auria,
Mullins, Kahn and Ecker, Js.*

### *Syllabus*

In accordance with *State* v. *Patterson* (276 Conn. 452), a trial court in a
    criminal case must issue a special credibility instruction to the jury
    when a jailhouse informant testifies about inculpatory statements made
    by a fellow inmate to the informant while they were incarcerated
    together.

Convicted, after a jury trial, of the crimes of murder, carrying a pistol without
    a permit, and criminal possession of a firearm in connection with the
    shooting death of the victim, the defendant appealed to the Appellate
    Court, claiming, inter alia, that the trial court improperly denied his
    request for a special credibility instruction concerning the testimony of
    jailhouse informants as it related to one of the state's key witnesses, S.
    At trial, the state presented no physical evidence linking the defendant
    to the victim's murder or to the firearm used, instead relying on the
    testimony of S, among other witnesses. S had approached the police
    more than two years after the shooting while he was in pretrial detention
    on two felony charges, hoping for a favorable disposition on his pending
    charges in exchange for information about the victim's murder. S told
    the police that he had seen the defendant when he was visiting the
    housing complex where the victim was murdered on the night in question
    and that, shortly thereafter, had heard gunshots. S also told the police
    that he and the defendant were watching television together the day
    after the shooting when S, who was holding a handgun, confessed to
    shooting the victim. The defendant requested that the trial court give a
    special credibility instruction concerning S's testimony in accordance
    with this court's decision in *Patterson*. The trial court denied the defen-
    dant's request and, instead, issued a general credibility instruction. On
    appeal, the Appellate Court affirmed the judgment of conviction, con-
    cluding, inter alia, that the defendant was not entitled to the special
    credibility instruction that he had sought because S did not testify about
    a confession the defendant made to him while they were fellow inmates
    but, rather, about events he had witnessed and a confession that had
    been made outside of the prison environment. On the granting of certifi-
    cation, the defendant appealed to this court. *Held* that the Appellate
    Court incorrectly determined that the trial court had properly denied
    the defendant's request for a jailhouse informant instruction: a defendant
    is entitled to a special credibility instruction regarding jailhouse infor-

* The listing of justices reflects their seniority status on this court as of
the date of oral argument.

State *v.* Jones

mants when the informant was incarcerated at the time he approached the police with information regarding a defendant's inculpatory statements and testifies at trial about those statements, regardless of where the statements were made, and, because S was incarcerated when he approached the police about the defendant's confession in exchange for leniency in his own pending criminal matters, he was a jailhouse informant for whom a special credibility instruction was required; moreover, the trial court's denial of the defendant's request to give such an instruction was not harmless, as the state presented no physical evidence linking the defendant to the victim's murder or the firearm used in the commission of that offense, the trial court's general credibility instruction did not fully inform the jury of the factors it could consider in evaluating S's credibility, and the only evidence corroborating S's testimony regarding the defendant's confession was the testimony of another witness who suffered from credibility problems; accordingly, this court reversed the judgment of the Appellate Court and remanded the case for a new trial.

(*One justice concurring separately*; *three justices dissenting in one opinion*)

Argued December 17, 2019—officially released December 1, 2020**

*Procedural History*

Two part substitute information charging the defendant, in the first part, with the crimes of murder and carrying a pistol without a permit, and, in the second part, with criminal possession of a firearm, brought to the Superior Court in the judicial district of Fairfield and tried to the jury before *Kavanewsky, J.*; verdict and judgment of guilty, from which the defendant appealed to the Appellate Court, *DiPentima, C. J.*, and *Alvord* and *Eveleigh, Js.*, which affirmed the trial court's judgment, and the defendant, on the granting of certification, appealed to this court. *Reversed*; *new trial*.

*Mark Rademacher*, assistant public defender, for the appellant (defendant).

*Timothy J. Sugrue*, assistant state's attorney, with whom, on the brief, were *John C. Smriga*, former state's attorney, and *Michael A. DeJoseph, Jr.*, senior assistant state's attorney, for the appellee (state).

** December 1, 2020, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

State *v.* Jones

*Opinion*

ECKER, J. In *State* v. *Patterson*, 276 Conn. 452, 886 A.2d 777 (2005), we held that a trial court must issue a special credibility instruction when a jailhouse informant testifies because such informants have "a powerful incentive, fueled by self-interest, to implicate falsely the accused," and, "[c]onsequently, [their] testimony . . . is inevitably suspect." Id., 469. A "classic jailhouse informant is a witness who has testified that the defendant has confessed to him or had made inculpatory statements to him while they were incarcerated together." *State* v. *Diaz*, 302 Conn. 93, 99 n.4, 25 A.3d 594 (2011). The question presented in this certified appeal is whether the Appellate Court correctly held "that the special credibility instruction required in *State* v. *Patterson*, [supra, 452], was not applicable to an incarcerated informant who offered his testimony that the defendant confessed to him when they socialized *outside of prison* in exchange for favorable treatment of the informant by the state . . . ." (Emphasis added.) *State* v. *Jones*, 331 Conn. 909, 202 A.3d 1023 (2019). We answer the certified question in the negative and reverse the judgment of the Appellate Court.

The jury reasonably could have found the following facts. On the evening of June 21, 2010, the victim, Michael Williams, was shot to death with a nine millimeter pistol outside of the Charles F. Greene Homes housing complex (Greene Homes housing complex) in Bridgeport. When the police arrived to investigate the shooting, they found twenty to thirty people in the area where the victim's body was found, but these potential witnesses were unwilling to cooperate with the police investigation.[1]

---

[1] Martin Vincze, a police officer employed by the city of Bridgeport, testified that only one of the witnesses was willing to talk to the police about the shooting. Vincze explained that he was not surprised by the lack of cooperation because "[i]t's a common thing in housing complexes." Angela Teele, a resident of the housing complex at the time of the shooting, con-

State *v.* Jones

Four days after the victim's murder, Bridgeport police detective John Tenn interviewed the defendant, Billy Ray Jones. During the video-recorded interview, the defendant informed Tenn that he had not known the victim and was not in Bridgeport on the night of the victim's murder. The defendant stated that he was in Norwalk on June 21, 2010, visiting his childhood friend, Benjamin Beau. Tenn later questioned Beau, who denied that he was with the defendant on the night in question. Tenn also interviewed the defendant's ex-girlfriend, Chanel Lawson, who informed Tenn that the defendant knew the victim.

There were no further developments in the investigation until years later, when two cooperating witnesses approached the state with information regarding the victim's murder. The first witness, Angela Teele, gave the police information in September, 2012, after she was "picked . . . up" on drug charges. Teele told the police that she had been a resident of the Greene Homes housing complex at the time, a friend of the victim, and an eyewitness to his murder. On the night of June 21, 2010, Teele saw the defendant approach the victim on the playground outside of the Greene Homes housing complex dressed in blue shorts and a black hoodie. The defendant "threw his hood on," walked up to the victim, and shot him once in the back of the head with a pistol. The defendant then "[r]an out [of] the playground."

The second witness, Larry Shannon, approached the police with information regarding the victim's murder in February, 2013, when he was in pretrial detention on two felony charges. Shannon told the police that he was visiting the Greene Homes housing complex on the night of the victim's murder when he saw the defendant, whom he had known for about two or three months,

firmed that, "for the residents in and around the Greene Homes housing project," there is a "general culture of not helping the police" or being a "snitch."

State *v.* Jones

dressed in jeans and a black hoodie. The defendant was "hooded up," which Shannon found to be suspicious because "[i]t was nice outside." Soon afterward, Shannon heard gunshots. He tried to run away, but he fell down due to a recent surgery on his Achilles tendon. Shannon met up with his stepbrother, who was a resident of the Greene Homes housing complex, and they "walked around the corner, and [the victim] was . . . slumped on the . . . playground."

The next day, on June 22, 2010, Shannon encountered the defendant at the Marina Village housing complex in Bridgeport. A "news clip came on the [television] about [the victim's] murder," and the defendant admitted to Shannon that he "did it." According to Shannon, the defendant was holding a silver, nine millimeter Ruger handgun when he confessed to Shannon that he "walked up to [the victim] and said, what's poppin' now," and then fired. No one else was present at the time of this conversation.

The defendant subsequently was arrested and charged with murder in violation of General Statutes § 53a-54a (a), carrying a pistol without a permit in violation of General Statutes § 29-35 (a), and criminal possession of a firearm in violation of General Statutes § 53a-217 (a). At the defendant's jury trial, the state relied primarily on the testimony of Teele and Shannon, as described in the preceding paragraphs, to establish the defendant's commission of the crimes charged. Additionally, the state presented the testimony of Beau and Lawson,[2] as well as portions of the defendant's video-recorded

[2] At trial, Lawson testified that the defendant and the victim knew "of each other, but [did] not know each other like they were friends . . . ." Lawson's prior video-recorded statement to the police, in which she stated that the defendant and the victim knew each other, was admitted into evidence at trial as a prior inconsistent statement under *State* v. *Whelan*, 200 Conn. 743, 753, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986). See, e.g., *State* v. *Simpson*, 286 Conn. 634, 641–42, 945 A.2d 449 (2008).

State *v.* Jones

interview with Tenn, to contradict the defendant's state-
ments that he was in Norwalk on the night of the murder
and that he did not know the victim. The state did not
present any physical evidence linking the defendant to
the victim's murder or the firearm used in the commis-
sion of the offense, which the police never recovered.

Defense counsel argued to the jury "that this is a case
that really comes down to the reliability and believa-
bility, or the lack thereof, of two witnesses: Angela
Teele and Larry Shannon." In light of the importance of
Shannon's testimony, defense counsel cross-examined
Shannon extensively regarding his motive for coming
forward with information about the victim's murder.
Shannon admitted that he had contacted the police in
the hope of trading information for "favorable treatment
on [his] jail situation . . . ." Shannon further admitted
that he received the favorable treatment for which he
bargained. Although he was in pretrial detention on two
felony offenses, he was released without having to pay
a bond shortly after contacting the police. Additionally,
Shannon was not sentenced to any jail time in connec-
tion with the two felony charges, even though he was
on probation when he committed those offenses and
someone with Shannon's criminal background typically
would receive a more severe sentence.

At the conclusion of the trial, defense counsel
requested a special credibility instruction with respect
to Shannon's testimony in accordance with *State* v.
*Patterson*, supra, 276 Conn. 469–70.[3] The defendant
contended that a jailhouse informant instruction was

[3] Defense counsel requested the following special credibility instruction:
"A witness who testified in this case, [Shannon], was incarcerated and was
awaiting trial for some crimes other than the crime involved in this case at
the time he first provided information to [the] police. You should look with
particular care at the testimony of this witness and scrutinize it very carefully
before you accept it. You should consider the credibility of this witness in
the light of any motive for testifying falsely and inculpating the accused.

"In considering the testimony of . . . Shannon, you may consider such
things as: [1] [t]he extent to which his testimony is confirmed by other

State *v.* Jones

warranted because Shannon ''was incarcerated and awaiting trial for felony charges when he first provided information to the police,'' testified that he ''provided such information to the police because he wanted to get out of jail and because he hoped to receive a favorable disposition [on] his pending criminal charges,'' and, ''in fact, received . . . these benefits as a result of the information he provided to the police in February, 2013.'' The state did not object to the requested instruction, but the trial court declined to issue it. Instead, the trial court issued a general credibility instruction[4] and

evidence; [2] [t]he specificity of the testimony; [3] [t]he extent to which the testimony contains details known only by the perpetrator; [4] [t]he extent to which the details of the testimony could be obtained from a source other than the defendant; [5] [t]he informant's criminal record; [6] [a]ny benefits received in exchange for the testimony or providing information to the police or [the] prosecutor; [7] [w]hether the witness expects to receive a benefit in exchange for the testimony or providing information to the police or prosecutor, regardless of whether such an agreement actually exists; [8] [w]hether the witness previously provided reliable or unreliable information; [and] [9] [t]he circumstances under which the witness initially provided the information to the police or the prosecutor, including whether the witness was responding to leading questions.''

[4] The trial court instructed the jury in relevant part: ''I now want to discuss the matter of credibility, by which I mean the believability of [the] witnesses. You have observed the witnesses. The credibility, the believability, of the witnesses and the weight to be given to their testimony are matters entirely within your hands. It is for you alone to determine their credibility. Whether or not you find the fact proven is not to be determined by the number of witnesses testifying for or against it. Again, it is the quality, not the quantity, of testimony [that] should be controlling. Nor is it necessarily so that you have to accept a fact as true because a witness has testified to it and no one contradicts it. The credibility of the witness and the truth of the fact are for you to determine.

''In weighing the credibility of the witnesses, you should consider the probability or improbability of their testimony. You should consider their appearance, conduct and demeanor while testifying and in court, and any interest, bias, prejudice or sympathy [that] a witness may apparently have for or against the state, or the accused or in the outcome of the trial. With each witness, you should consider his ability to observe facts correctly, recall them and relate them to you truly and accurately. You should consider whether and to what extent witnesses needed their memories refreshed while testifying. You should, in short, size up the witnesses and make your own judgment as to their credibility and decide what portion—all, some or none—of any particular witness' testimony you will believe based on these principles. You should harmonize the evidence as far as it can reasonably be done. You should use all of your experience, your knowledge of human

State *v.* Jones

singled out Shannon's testimony for special consideration because he previously had been convicted of felony offenses.[5]

After the case was submitted to the jury for deliberation, the jury asked to review the testimony of Teele and Shannon. The jury also asked the trial court to replay the defendant's June 25, 2010 video-recorded interview with Tenn, as well as Lawson's testimony. After reviewing the requested information and deliberating further, the jury found the defendant guilty of the charged offenses. The trial court rendered judgment in accordance with the jury's verdict and sentenced the defendant to a total effective sentence of fifty years of imprisonment.

nature and of the motives that influence and control human conduct, and you should test the evidence against that knowledge. You should bring to bear upon the testimony of the witnesses the same considerations and use the same sound judgment you apply to questions of truth and veracity, as they present themselves to you in everyday life.

"You are entitled to accept any testimony which you believe to be true and to reject either wholly or in part the testimony of any witness you believe has testified untruthfully or erroneously. The credit that you will give to any testimony offered is something [that] you alone must determine. If you find that a witness has intentionally testified falsely, you should keep that in mind and scrutinize the whole testimony of the witness. But it still remains up to you to accept or reject all or any part of the testimony. If you find that a witness has been inaccurate in some way, and you do not think that the inaccuracy was consciously dishonest, you can consider that inaccuracy in evaluating the rest of [the witness'] testimony. You know that persons sometimes forget things or they get something wrong. The significance you attach to a mistake may vary more or less with the particular fact as to which the inaccuracy existed or with the surrounding circumstances. Give to it that weight which your own mind leads you to think it ought to have, in which you would attach to it in the ordinary affairs of life [when] someone came to you in a matter and you found in some particular, he was inaccurate."

[5] The trial court instructed the jury in relevant part: "There was evidence that one witness, [Shannon], was previously convicted of certain felonies. This evidence is . . . admissible [only] on the question of the witness' credibility, that is, the weight that you will give his testimony. So a felony conviction bears only on [the witness'] credibility. It is your duty to determine whether any witness is to be believed wholly or partly or not at all. You may consider a witness' prior convictions in weighing his credibility, but it is still your duty to decide what weight to give to the convictions as you decide is fair and reasonable in determining the matter of credibility."

The Appellate Court affirmed the defendant's judgment of conviction. *State* v. *Jones*, 187 Conn. App. 752, 754, 770, 203 A.3d 700 (2019). The Appellate Court determined that the defendant was not entitled to a jailhouse informant instruction pursuant to *State* v. *Diaz*, supra, 302 Conn. 101–102, and *State* v. *Salmond*, 179 Conn. App. 605, 627–28, 180 A.3d 979, cert. denied, 328 Conn. 936, 183 A.3d 1175 (2018), on the ground that Shannon "did not testify as to a confession that the defendant made while they were fellow inmates." *State* v. *Jones*, supra, 761. Because "Shannon testified about events that he had witnessed and a confession that took place while both of them were socializing outside of the prison environment"; id., 762; the Appellate Court determined that the trial court's "general credibility instruction [was] sufficient."[6] Id., 764.

On appeal, the defendant contends that he was entitled to a jailhouse informant instruction because Shannon was an incarcerated witness who had a strong incentive to fabricate false testimony regarding the defendant's confession to the commission of the crimes charged.[7] The defendant points out that Shannon was in pretrial detention at the time he approached the police with information and that Shannon expected to—

---

[6] The Appellate Court also rejected the defendant's claim that "[a] specific instruction on the dangers of eyewitness identification was required in this case"; (internal quotation marks omitted) *State* v. *Jones*, supra, 187 Conn. App. 765; reasoning that, because "both Teele and Shannon had known the defendant prior to seeing him on the night of June 21, 2010," their "identifications of the defendant did not give rise to the risk of misidentification that the defendant's requested instructions were specifically designed to address." (Footnote omitted.) Id., 770. The Appellate Court's holding on this point is not at issue in the present appeal.

[7] Alternatively, the defendant urges this court to "extend the rule of *State* v. *Patterson*, [supra, 276 Conn. 452], to *all* jailed informants who received a benefit for their testimony." (Emphasis added.) Because we agree with the defendant that a jailhouse informant instruction was required in the present case, even though Shannon testified about a confession that occurred outside of the prison context, we need not address the defendant's alternative request for an expansion of the *Patterson* rule.

State *v.* Jones

and, in fact, received—special favor from the state in exchange for his testimony. The state responds that Shannon was not a jailhouse informant for whom a special credibility instruction was required because, unlike "a jailhouse confession, which easily can be fabricated and is difficult to meaningfully cross-examine," testimony about a confession that occurred outside of prison is "not easily fabricated," may be "meaningfully tested by cross-examination, and [is] subject to comparison with other evidence in the case." We agree with the defendant and, therefore, reverse the judgment of the Appellate Court.

The general rule is that "a [criminal] defendant is not entitled to an instruction singling out any of the state's witnesses and highlighting his or her possible motive for testifying falsely." (Internal quotation marks omitted.) *State* v. *Diaz*, supra, 302 Conn. 101. "This court has held, however, that a special credibility instruction is required for three types of witnesses, namely, complaining witnesses,[8] accomplices[9] and jailhouse informants." (Footnotes altered.) Id., 101–102. With respect to jailhouse informants, we have explained that a special credibility instruction is required because "an informant

[8] "'Under the complaining witness exception, when the complaining witness [himself] could . . . have been subject to prosecution depending only upon the veracity of his account of [the] particular criminal transaction, the court should . . . [instruct] the jury in substantial compliance with the defendant's request to charge to determine the credibility of that witness in the light of any motive for testifying falsely and inculpating the accused. . . . In order for [such a] request to be applicable to the issues in the case, there must be evidence . . . to support the defendant's assertion that the complaining witness was the culpable party.' " *State* v. *Diaz*, supra, 302 Conn. 102 n.6, quoting *State* v. *Patterson*, supra, 276 Conn. 467–68.

[9] "'[T]he inherent unreliability of accomplice testimony ordinarily requires a particular caution to the jury [because] . . . [t]he conditions of character and interest most inconsistent with a credible witness, very frequently, but not always, attend an accomplice when he testifies. When those conditions exist, it is the duty of the [court] to specially caution the jury.' " *State* v. *Diaz*, supra, 302 Conn. 102 n.7, quoting *State* v. *Patterson*, supra, 276 Conn. 468.

State *v.* Jones

who has been promised a benefit by the state in return for his or her testimony has a powerful incentive, fueled by self-interest, to implicate falsely the accused. Consequently, the testimony of such an informant . . . is inevitably suspect.'' *State* v. *Patterson*, supra, 276 Conn. 469. ''As the United States Supreme Court observed [almost seventy] years ago, '[t]he use of informers, accessories, accomplices, false friends, or any of the other betrayals which are ''dirty business'' may raise serious questions of credibility.' '' Id., quoting *On Lee* v. *United States*, 343 U.S. 747, 757, 72 S. Ct. 967, 96 L. Ed. 1270 (1952). Accordingly, courts have allowed criminal defendants ''broad latitude to probe [informants'] credibility by cross-examination'' and to have ''the credibility issue [submitted] to the jury *with careful instructions*.'' (Emphasis in original; internal quotation marks omitted.) *State* v. *Patterson*, supra, 469. These careful instructions include an advisement that the testimony of a jailhouse informant should ''be reviewed with particular scrutiny and weighed . . . with greater care than the testimony of an ordinary witness.'' (Internal quotation marks omitted.) Id., 465.

In *State* v. *Arroyo*, 292 Conn. 558, 567, 973 A.2d 1254 (2009), cert. denied, 559 U.S. 911, 130 S. Ct. 1296, 175 L. Ed. 2d 1086 (2010), we held that ''*Patterson*'s requirement for a special credibility instruction . . . should be extended to apply to the testimony of all jailhouse informants,'' regardless of whether the informant has ''received a promise of a benefit'' from the state. We reasoned that ''there have been a number of high profile cases involving wrongful convictions based on the false testimony of jailhouse informants'' and that ''the expectation of a [r]eward for testifying is a systemic reality . . . even [when] the informant has not received an explicit promise of a reward. In addition, several commentators have pointed out that jailhouse informants frequently have motives to testify falsely that may have nothing to do with the expectation of receiving benefits

State *v.* Jones

from the government.'' (Citation omitted; footnote omitted; internal quotation marks omitted.) Id., 567–69. ''In light of [the] growing recognition of the inherent unreliability of jailhouse informant testimony, we [were] persuaded that the trial court should give a special credibility instruction to the jury whenever such testimony is given, regardless of whether the informant has received an express promise of a benefit.'' Id., 569. In guiding the jury's assessment of witness credibility in this particular context, we indicated that ''the trial court may ask the jury to consider: the extent to which the informant's testimony is confirmed by other evidence; the specificity of the testimony; the extent to which the testimony contains details known only by the perpetrator; the extent to which the details of the testimony could be obtained from a source other than the defendant; the informant's criminal record; any benefits received in exchange for the testimony; whether the informant previously has provided reliable or unreliable information; and the circumstances under which the informant initially provided the information to the police or the prosecutor, including whether the informant was responding to leading questions.'' Id., 570–71.

Nonetheless, a criminal defendant does not have an automatic or absolute right to the issuance of a jailhouse informant instruction. Although the trial court is required to give such an instruction when a proper request to charge has been submitted, the trial court does not commit plain error if it fails to give the instruction sua sponte, so long as ''the court has instructed the jury generally on the credibility of witnesses'' and the jury is aware of the witness' motivation for testifying. *State* v. *Ebron*, 292 Conn. 656, 675–76, 975 A.2d 17 (2009), overruled in part on other grounds by *State* v. *Kitchens*, 299 Conn. 447, 10 A.3d 942 (2011); see also *State* v. *Diaz*, supra, 302 Conn. 95 (holding that trial court did not commit plain error when it failed to issue, sua sponte, jailhouse informant instruction regarding

State *v.* Jones

the testimony of three witnesses "who were involved in the criminal justice system and, therefore, may have had a personal interest in testifying for the state").

With these principles in mind, we consider the issue presented by this case, which is whether a trial court properly rejects a criminal defendant's request to charge the jury regarding the special credibility principles governing jailhouse informant testimony when an informant, who was incarcerated at the time he or she approached the police with information regarding the defendant's commission of the crimes charged, testifies at trial as to an alleged confession that the defendant made outside of the prison environment. Although we have not previously addressed this question, we discussed when a jailhouse informant instruction is required in *State* v. *Diaz*, supra, 302 Conn. 99–114, as part of our plain error review and analysis of whether to exercise our supervisory authority. In that case, the defendant, Luis Diaz, was convicted of fatally shooting a man outside of a bar in Bridgeport. Id., 95. Three witnesses offered inculpatory information about the defendant's commission of the crime in exchange for beneficial treatment in their own pending criminal matters. Id., 95–96. Two of the witnesses were eyewitnesses to the shooting. Id., 96–97. The third witness, Eddie Ortiz, testified that he had witnessed the shooting and that Diaz had made inculpatory statements to him while the two men were "placed in the same holding cell . . . ." Id., 96; see id. (Ortiz testified that Diaz "said to him, '[y]ou know what I did' and 'I know where you live at' " and "offered him $5000 not to testify"). With respect to the first two witnesses, we noted that "*Patterson* has not been applied to require a special credibility instruction when an incarcerated witness has testified concerning events surrounding the crime that he or she witnessed outside of prison, as distinct from confidences that the defendant made to the witness while they were incarcerated

State *v.* Jones

together.'' Id., 102. Accordingly, we observed that it ''would be an expansion of *Patterson*'' to require a jailhouse informant instruction and opined that the failure to give the special credibility instruction concerning these two eyewitnesses could not have been plain error because it ''would not have been improper even if [Diaz] had requested such an instruction.'' Id., 104. As for Ortiz, who testified both as to events that he observed outside of prison as well as inculpatory statements that Diaz made while the two men were fellow inmates incarcerated together, we explained that, even if we ''assume[d] that the trial court's failure to give a special credibility instruction for Ortiz would have been improper under *Arroyo* if [Diaz] had requested such an instruction, the court's failure to do so sua sponte did not rise to the level of reversible plain error under *Ebron* because the trial court gave a general credibility instruction and the jury was made aware of Ortiz' motivation for testifying.'' Id., 104–105.

We also rejected Diaz' alternative claim ''that this court [should] exercise its supervisory power to instruct the trial courts that they must give a special credibility instruction whenever a witness in a criminal case is incarcerated or is serving out a sentence, or otherwise is in a position to receive a benefit from the state in exchange for testifying, as long as there is some additional evidence indicating that the witness is not wholly reliable or that he expects some benefit from this testimony.'' Id., 106. We acknowledged ''that some of the same concerns that gave rise to our decision in *Arroyo* are present whenever a witness is in a position to receive a benefit from the government'' but disagreed that ''these concerns are as weighty in cases [in which] the witness is not testifying about a jailhouse confession, but is testifying about events concerning the crime that the witness observed. Testimony by a jailhouse informant about a jailhouse confession is inherently

State *v.* Jones

suspect because of the ease with which such testimony can be fabricated, the difficulty in subjecting witnesses who give such testimony to meaningful cross-examination and the great weight that juries tend to give to confession evidence.'' Id., 109. ''In contrast, when a witness testifies about events surrounding the crime that the witness observed, the testimony can be compared with the testimony of other witnesses about those events, and the ability of the witness to observe and remember the events can be tested.'' Id., 110. This reasoning led us to ''decline [Diaz'] request that we exercise our supervisory powers to instruct the trial courts that they must give a special credibility instruction in every such case.'' Id., 111. We emphasized, however, that ''the trial courts . . . have the discretion to give a special credibility instruction'' whenever they reasonably believe ''that a witness' testimony may be particularly unreliable because the witness has a special interest in testifying for the state and the witness' motivations may not be adequately exposed through cross-examination or argument by counsel.'' Id., 113. ''In determining whether to give such an instruction, the trial court may consider the circumstances under which the witness came forward; the seriousness of the charges with which the witness has been charged or convicted; the extent to which the state is in a position to provide a benefit to the witness and the potential magnitude of any such benefit; the extent to which the witness' testimony is corroborated by other evidence; the importance of the witness' testimony to the state's case; and any other relevant factor.'' Id.

*Diaz* delineates a clear distinction between a ''classic jailhouse informant,'' who testifies regarding inculpatory statements that the defendant made while the informant and the defendant were ''incarcerated together''; id., 99 n.4; and an incarcerated witness who offers testimony ''about events concerning the crime that the wit-

State *v.* Jones

ness observed'' outside of prison. Id., 109. For the former category of witnesses, the trial court is required to give a jailhouse informant instruction pursuant to *Patterson* and *Arroyo*, whereas ''cross-examination and argument by counsel are far more likely to be adequate tools for exposing the truth'' with respect to the latter type of witness, and, consequently, a jailhouse informant instruction is not required. Id., 110.

The witness in the present case, Shannon, fits neither category of witness described in *Diaz* because he is neither the ''classic jailhouse informant'' nor an incarcerated witness whose testimony is solely about events he observed outside of prison. Whether the holdings in *Patterson* and *Arroyo* apply to Shannon, an incarcerated witness who testified about inculpatory statements that the defendant made outside of prison, is a question of law, over which we exercise plenary review. See, e.g., *MacDermid, Inc.* v. *Leonetti*, 328 Conn. 726, 738–39, 183 A.3d 611 (2018). We conclude that the logic and policy driving our precedent compel the conclusion that *Patterson* and *Arroyo* apply to witnesses, like Shannon, who were incarcerated at the time they offered or provided testimony regarding a defendant's inculpatory statements, regardless of the location where those statements were made.

As the foregoing discussion of *Patterson*, *Arroyo*, and *Diaz* makes clear, a special credibility instruction is required for jailhouse informants because (1) they ''have an unusually strong motive to implicate the accused falsely''; *State* v. *Patterson*, supra, 276 Conn. 470 n.11; (2) confession evidence ''may be the most damaging evidence of all''; (internal quotation marks omitted) id.; and (3) false confessions are easy to fabricate, but difficult to subject to ''meaningful cross-examination . . . .'' *State* v. *Diaz*, supra, 302 Conn. 109. These factors coalesce to create an impermissible risk of ''wrongful convictions based on the false testimony

502 AUGUST, 2021 337 Conn. 486

State *v.* Jones

of jailhouse informants.'' *State* v. *Arroyo*, supra, 292 Conn. 567. Indeed, false confession evidence from informants ''is *the* leading factor associated with wrongful convictions in capital cases'' and ''a major factor contributing to wrongful convictions in noncapital cases.'' (Emphasis in original.) J. Roth, ''Informant Witnesses and the Risk of Wrongful Convictions,'' 53 Am. Crim. L. Rev. 737, 744 (2016). Incarcerated witnesses who trade information regarding a defendant's confession for favorable treatment from the state not only have ''deep conflicts of interest'' that result in ''the least credible type of evidence,'' but they also offer testimony that is ''among the most persuasive to jurors because [they] typically allege to have personally heard defendants confess their guilt to the crimes charged. Introduction of a defendant's confession, from any source, radically changes the complexion of a case, particularly one lacking other evidence that directly implicates the defendant in the crime.'' R. Covey, ''Abolishing Jailhouse Snitch Testimony,'' 49 Wake Forest L. Rev. 1375, 1375 (2014).

The grave risks posed by false confession testimony from incarcerated informants, and the difficulty of mitigating those risks through meaningful cross-examination, do not depend on the location where the alleged false confession occurs.[10] Regardless of whether a crim-

_____

[10] The dissent points out that some states limit the definition of a jailhouse informant to ''those individuals testifying to statements made by the defendant while the witness and the defendant were incarcerated together.'' See also footnote 2 of the dissenting opinion. This fact is unpersuasive, however, for three reasons. First, the practice of other states in this context varies widely, and there is no consensus; some states have adopted a limited definition of a ''jailhouse informant,'' but many other states and scholarly commentators take a broader view. See, e.g., *Turner* v. *State*, 515 P.2d 384, 386 (Alaska 1973) (special credibility instruction is appropriate for ''an interested witness,'' who ''is usually either paid, or hoping for lenient treatment of his own crimes, or both'' (internal quotation marks omitted)); *State* v. *Barksdale*, 266 Kan. 498, 513, 973 P.2d 165 (1999) (special credibility instruction is appropriate for ''informant,'' which is statutorily defined as someone ''who, in exchange for benefits from the [s]tate, acts as an agent

State *v.* Jones

inal defendant's alleged confession takes place inside
or outside of prison, the incarcerated informant offering
such testimony has a strong personal motive to fabri-
cate a false confession, which by its nature would be
difficult, if not impossible, to undermine effectively
through cross-examination. As one scholarly commen-
tator has observed, such false confession evidence is
"difficult to impeach effectively because it is invariably
of the 'he said-she said' variety. As long as the [incarcer-
ated informant] can plausibly testify that he had an
opportunity—no matter how fleeting—to speak with
the defendant, the [informant's] claim that the defendant
confessed to him is practically unverifiable. Defense
counsel can impugn the credibility of the [informant],
but many criminal defendants—especially defendants

for the [s]tate in obtaining evidence against a defendant" (internal quotation
marks omitted)); A. Burnett, "The Potential for Injustice in the Use of
Informants in the Criminal Justice System," 37 Sw. U. L. Rev. 1079, 1079
(2008) (jailhouse informants are "persons in custody or facing criminal
prosecution who have an expectation of some reward in the form of reduc-
tion of charges, eligibility for bail, leniency in sentencing or better conditions
of confinement" (internal quotation marks omitted)). Second, the dissent
overlooks the fact that *federal* courts have determined that a special credibil-
ity instruction is appropriate for any cooperating witness who "provide[s]
evidence against a defendant for some personal advantage or vindication,
as well as for pay or immunity." *People* v. *Dela Rosa*, 644 F.2d 1257, 1259
(9th Cir. 1980); see also *United States* v. *Garcia*, 528 F.2d 580, 587–88 (5th
Cir.) ("a defendant is entitled to a special cautionary instruction on the
credibility of an accomplice or a government informer if he requests it" in
order "to [e]nsure that no verdict based solely on the uncorroborated testi-
mony of a witness who may have good reason to lie is too lightly reached"),
cert. denied, 429 U.S. 898, 97 S. Ct. 262, 50 L. Ed. 2d 182 (1976), and cert.
denied sub nom. *Sandoval* v. *United States*, 426 U.S. 952, 96 S. Ct. 3177, 49
L. Ed. 2d 1190 (1976). See generally 2A C. Wright & P. Henning, Federal
Practice and Procedure (4th Ed. 2009) § 490, pp. 478–79 (special credibility
instruction should be issued for "[a]n accomplice or informer, including
one testifying under a grant of immunity"). Third, we are particularly disin-
clined to take guidance from the more restrictive practices adopted by a
handful of other states when our own legislature has chosen a broader
definition, which includes a witness who testifies as to a confession made
outside of the prison environment. See Public Acts 2019, No. 19-132, § 6,
codified at General Statutes (Supp. 2020) § 54-86o (d).

State *v.* Jones

with a criminal history—go into a jury trial with their own credibility highly suspect and will often be unlikely to come out on top in any swearing contest.''[11] Id., 1401–1402.

As the dissent notes, the United States Supreme Court observed, in *United States* v. *Henry,* 447 U.S. 264, 274, 100 S. Ct. 2183, 65 L. Ed. 2d 115 (1980), that there are '' 'powerful psychological inducements to reach for aid when a person is in confinement.' '' The dissent focuses too narrowly on how these inducements may prompt an incarcerated defendant ''to speak to another inmate about his crimes'' when the correct analysis examines the manner in which the self-serving inducements may incentivize an incarcerated witness to fabricate false confession evidence. The dissent's erroneous focus misapprehends the fundamental purpose and function of the special credibility instruction, reflected in our own precedents, which is not to alert the jury to the possibility of an involuntary or coerced confession but, instead, to caution the jury that a jailhouse informant's testimony must ''be reviewed with particular scrutiny and weighed . . . with [great] care'' in light of the witness' ''powerful motive to falsify his or her testimony . . . .'' (Internal quotation marks omitted.) *State* v. *Patterson,* supra, 276 Conn. 465, 469; see also *State* v. *Diaz,* supra, 302 Conn. 102–103 (''[t]he rationale for requiring a special credibility instruction . . . is that . . . the testimony of [a jailhouse] informant, like that of an accomplice, is inevitably suspect'' (internal quotation marks omitted)); *State* v. *Arroyo,* supra, 292 Conn. 569 (recog-

_____

[11] We disagree with the dissent that a defendant's ability to cross-examine an incarcerated witness regarding ''the circumstances surrounding the alleged confession'' depends in any significant respect on *where* the alleged confession is heard. Regardless of where the alleged confession occurred, such testimony is ''inherently suspect because of the ease with which such testimony can be fabricated, the difficulty in subjecting witnesses who give such testimony to meaningful cross-examination and the great weight that juries tend to give to confession evidence.'' *State* v. *Diaz,* supra, 302 Conn. 109.

State *v.* Jones

nizing "the inherent unreliability of jailhouse infor-
mant testimony").

The inherent unreliability of jailhouse informant testi-
mony, combined with the endemic problems of proof,
has prompted "at least eighteen states" to require "some
corroboration of jailhouse informant testimony to sup-
port a conviction . . . ." *State* v. *Marshall*, 882 N.W.2d
68, 83 (Iowa 2016), cert. denied, U.S. , 137 S.
Ct. 829, 197 L. Ed. 2d 68 (2017). Connecticut has now
joined many of its sister states by enacting legislation,
specifically, No. 19-131 of the 2019 Public Acts (P.A.
19-131), governing the admission of "jailhouse witness"
testimony in criminal trials. Justice Palmer's recent con-
curring and dissenting opinion in *State* v. *Leniart*, 333
Conn. 88, 215 A.3d 1104 (2019), thoroughly describes
that legislation and the critical safeguards that it imple-
ments: "That legislation, among other things, requires
that prosecutors who intend to introduce the testimony
of a jailhouse witness disclose certain information to
defense counsel, including the complete criminal his-
tory of the jailhouse witness, any pending charges, any
cooperation agreement between the state and the wit-
ness, any benefits offered or provided by the state to the
witness, the substance, time and place of any statement
allegedly given by the defendant to the witness, the sub-
stance, time and place of any statement given by the
witness implicating the defendant in the charged offense,
whether, at any time, the witness recanted any testi-
mony subject to disclosure, and information concerning
any other criminal prosecution in which the jailhouse
witness previously testified or offered to testify. See
P.A. 19-131, § 1. In addition, the legislation establishes
a statewide system for recording and tracking informa-
tion on the use of jailhouse witnesses. See P.A. 19-131,
§ 3." *State* v. *Leniart*, supra, 164–65 (*Palmer, J.*, concur-
ring in part and dissenting in part).

State *v.* Jones

The legislature's concern regarding reliability in this particular context was great enough to prompt the enactment of heightened procedural safeguards to ensure judicial scrutiny of such testimony as a condition of evidentiary admissibility, as Justice Palmer's concurring and dissenting opinion describes: "[P]erhaps most significantly, under P.A. 19-131, in cases involving murder, murder with special circumstances, felony murder, arson murder, sexual assault in the first degree, aggravated sexual assault in the first degree, and aggravated sexual assault of a minor, and, upon motion of the defendant, the trial court must conduct a hearing to decide whether a jailhouse witness' testimony is sufficiently reliable to be admissible. See P.A. 19-131, § 2. The legislation further provides that, unless the prosecutor can establish by a preponderance of the evidence that the witness' testimony is reliable, the court shall not allow the testimony to be admitted. See P.A. 19-131, § 2. Finally, in making its determination concerning the reliability of the witness' testimony, the court is required to consider the factors enumerated in P.A. 19-131, § 1, as well as the following factors: '(1) [t]he extent to which the jailhouse [witness'] testimony is confirmed by other evidence; (2) [t]he specificity of the testimony; (3) [t]he extent to which the testimony contains details known only by the perpetrator of the alleged offense; (4) [t]he extent to which the details of the testimony could be obtained from a source other than the defendant; and (5) [t]he circumstances under which the jailhouse witness initially provided information supporting such testimony to [the police] or a prosecutorial official, including whether the jailhouse witness was responding to a leading question.' P.A. 19-131, § 2." *State* v. *Leniart*, supra, 333 Conn. 165–66 (*Palmer, J.*, concurring in part and dissenting in part).

Of particular importance here is that P.A. 19-131, as amended by No. 19-132 of the 2019 Public Acts (P.A. 19-132), defines a "jailhouse witness" as "a person who

State *v.* Jones

offers or provides testimony concerning statements made to such person by another person with whom he or she was incarcerated, *or an incarcerated person who offers or provides testimony concerning statements made to such person by another person who is suspected of or charged with committing a criminal offense.*'' (Emphasis added.) P.A. 19-132, § 6, codified at General Statutes (Supp. 2020) § 54-86o (d). Consistent with our holding today, the procedural protections embodied in P.A. 19-131 are not dependent on the location where the defendant's alleged statements occurred; instead, they are applicable regardless of whether an incarcerated witness testifies as to statements the defendant made inside or outside of prison. See id. By concluding that a ''jailhouse informant'' under *Patterson* and its progeny is the same as a ''jailhouse witness'' under P.A. 19-131 and P.A. 19-132, we create a harmonious body of law relating to the same subject matter, consistent with the intent of the legislature.[12]

In the present case, Shannon was incarcerated at the time he offered the state information regarding the defendant's confession to the victim's murder in exchange

[12] The dissent believes that it is ''unnecessary to harmonize'' the legislative definition of a ''jailhouse witness'' with our understanding of a ''jailhouse informant'' because the legislature was not ''invalidating our case law's definition as to jury instructions.'' This observation misses the mark. Though it is not *necessary* to harmonize the definitions, it certainly seems preferable to do so unless there is a good reason for us to reject the legislature's underlying policy determination. To be sure, P.A. 19-131 and P.A. 19-132 were not intended to prescribe rules regarding the issuance of special credibility instructions, but it is entirely appropriate that our views of proper instructional language should be informed by the choice made by the legislature to adopt a definition of ''jailhouse witness'' that is not dependent on the location of the defendant's alleged confession. We can think of no reason to employ a more restrictive definition than the one adopted by the legislature to address precisely the same policy concern, namely, the potential unreliability of a jailhouse witness' testimony concerning statements purportedly made by a criminal defendant. Pursuant to our decision today, the pretrial protections embodied in P.A. 19-131 for the testimony of a ''jailhouse witness'' will be coextensive with the trial protections afforded by the special credibility instruction for the testimony of a ''jailhouse informant.''

State *v.* Jones

for leniency in his own criminal case.[13] Because Shan-
non was an incarcerated informant who offered and
provided testimony about a criminal defendant's incul-
patory statements, we conclude that he was a jailhouse
informant for whom a special credibility instruction
was required.[14] The trial court therefore improperly
denied the defendant's unopposed request for a jail-
house informant instruction.

This does not end our inquiry, however, because we
must determine whether the trial court's failure to
charge the jury in accordance with the defendant's

[13] Consistent with the legislative definition of a "jailhouse witness," we
conclude that a special credibility instruction is required when a witness is
incarcerated at the time he or she either "offers or provides" testimony
regarding a defendant's inculpatory statements. P.A. 19-132, § 6. In either
circumstance, there is a "need for caution" because the witness is in "the
power of the state, is looking to better his or her situation in a jailhouse
environment where bargaining power is otherwise hard to come by, and
will often have a history of criminality." (Internal quotation marks omitted.)
*State* v. *Arroyo*, supra, 292 Conn. 568–69 n.9. We disagree with the dissent
that the expectation of "a *future* benefit" is the defining characteristic of
a jailhouse informant. (Emphasis in original.) The *timing* of the sought after
benefit is not critical because what matters is the witness' incentive to
provide false testimony regarding a defendant's inculpatory statements.
Indeed, we stated in *Arroyo* that a special credibility instruction is required
regardless of whether the defendant has received, or expects to receive, a
benefit. *State* v. *Arroyo*, supra, 569. We also disagree with the dissent that
"the number of witnesses that would qualify as a jailhouse informant are
endless . . . ." To the contrary, we hold today that a special credibility
instruction is required only for those limited number of witnesses who
are incarcerated at the time they offer or provide testimony regarding a
defendant's confession to criminal wrongdoing.

[14] The state points out that Shannon was not only a jailhouse informant,
but also an eyewitness who testified about events he personally observed.
We agree with the state that Shannon's eyewitness testimony concerning
the defendant's presence at the Greene Homes housing complex on the
night of the victim's murder "can be compared with the testimony of other
witnesses" and tested through cross-examination. *State* v. *Diaz*, supra, 302
Conn. 110. But Shannon did not provide only eyewitness testimony; he also
provided jailhouse informant testimony regarding the defendant's confession
to the murder of the victim. For the reasons explained in the text of this
opinion, Shannon's jailhouse informant testimony does not share the same
guarantees of trustworthiness as his eyewitness testimony, and, therefore,
a special credibility instruction was required. See id., 96, 104–05 (assuming,
without deciding, that "the trial court's failure to give a special credibility
instruction for Ortiz," who testified as both eyewitness and jailhouse infor-
mant, "would have been improper under *Arroyo* if [Diaz] had requested
such an instruction").

State *v.* Jones

request was harmful. "As we previously have recognized, an instructional error relating to general principles of witness credibility is not constitutional in nature.
. . . Consequently, the defendant bears the burden of establishing that the error deprived him of his due process right to a fair trial." (Citation omitted.) *State* v. *Patterson*, supra, 276 Conn. 471–72. "[A] nonconstitutional error is harmless when an appellate court has a fair assurance that the error did not substantially affect the verdict. . . . Several factors guide our determination of whether the trial court's failure to give the requested instruction was harmful. These considerations include: (1) the extent to which [the jailhouse informant's] apparent motive for falsifying his testimony was brought to the attention of the jury, by cross-examination or otherwise; (2) the nature of the court's instructions on witness credibility; (3) whether [the informant's] testimony was corroborated by substantial independent evidence; and (4) the relative importance of [the informant's] testimony to the state's case." (Citation omitted; internal quotation marks omitted.) *State* v. *Arroyo*, supra, 292 Conn. 571–72.

The first factor favors the state here because, as the state points out, "the jury was well aware of Shannon's admitted motivational self-interest, the two and one-half year delay in Shannon coming forward, the fact of his incarceration, the pending charges that admittedly drove him to provide the police with information, and the benefits that he admittedly received from the police and the state before he testified, all of which were elicited during his examination and highlighted in the closing arguments of counsel." See *State* v. *Arroyo*, supra, 292 Conn. 572 (concluding that first factor favored state when "defense counsel cross-examined both [jailhouse informants] extensively as to their motive for testifying and addressed their incentive to lie in closing argument"); *State* v. *Slater*, 285 Conn. 162, 190, 939 A.2d 1105 ("the informant's potentially

State *v.* Jones

improper motive for testifying . . . amply was brought to the attention of the jury'' because two witnesses testified about informant's deal with state and informant's motive to lie was emphasized by defense counsel during oral argument), cert. denied, 553 U.S. 1085, 128 S. Ct. 2885, 171 L. Ed. 2d 822 (2008); *State* v. *Patterson,* supra, 276 Conn. 472 (''the jury was well aware of the fact that [the jailhouse informant] had been promised certain benefits by the state in return for his cooperation against the defendant'' because testimony was elicited on direct examination and cross-examination).

Turning to the second factor, we note that the trial court issued a general credibility instruction, which advised the jury that, when evaluating the credibility of a witness, it should consider, among other things, ''any interest, bias, prejudice or sympathy [that] a witness may apparently have for or against the state, or the accused or in the outcome of the trial.'' Footnote 4 of this opinion. Although the trial court singled out Shannon's testimony for special consideration because he previously had been convicted of certain felonies; see footnote 5 of this opinion; the trial court failed to inform the jury of the other factors that it properly may consider when evaluating Shannon's credibility, namely, ''[1] [t]he extent to which his testimony is confirmed by other evidence; [2] [t]he specificity of the testimony; [3] [t]he extent to which the testimony contains details known only by the perpetrator; [4] [t]he extent to which the details of the testimony could be obtained from a source other than the defendant; [5] [t]he informant's criminal record; [6] [a]ny benefits received in exchange for the testimony or providing information to the police or [the] prosecutor; [7] [w]hether the witness expects to receive a benefit in exchange for the testimony or providing information to the police or prosecutor, regardless of whether such an agreement actually exists; [8] [w]hether the witness previously provided reliable or unreliable information; [and] [9] [t]he circumstances under which the witness

State *v.* Jones

initially provided the information to the police or the prosecutor, including whether the witness was responding to leading questions.'' See also Connecticut Criminal Jury Instructions § 2.5-3, available at https://jud.ct.gov/ JI/Criminal/Criminal.pdf (last visited November 27, 2020). The second factor therefore stands in equipoise.

The third and fourth factors, which we consider conjunctively, militate in favor of the conclusion that the trial court's instructional error substantially affected the jury's verdict and deprived the defendant of his right to a fair trial. There was no physical evidence linking the defendant to the victim's murder, and the defendant's confession to Shannon was brief, nonspecific, and did not contain any details known only to the perpetrator. The sole evidence corroborating the defendant's confession was Teele's eyewitness testimony, but Teele suffered from credibility problems of her own in light of her self-interested motives arising from her involvement in the criminal justice system. Teele waited more than two years to inform the police that she had witnessed the victim's murder, and she came forward only after she had been "picked . . . up" on drug charges. Although there is no evidence in the record that the state dropped the charges against Teele in exchange for her testimony against the defendant, we previously have recognized that "there is frequently an implicit understanding that [an informant involved in the criminal justice system] will receive some consideration in exchange for testifying." *State* v. *Diaz*, supra, 302 Conn. 109; see also *Marquez* v. *Commissioner of Correction*, 330 Conn. 575, 603, 198 A.3d 562 (2019) (recognizing state's "practice of [entering into] informal, off-the-record leniency understandings with cooperating witnesses"). Teele was not a jailhouse informant, but her involvement in the criminal justice system raises "some of the same concerns that gave rise to our decision in *Arroyo* . . . ." *State* v. *Diaz*, supra, 109. The only per-

State *v.* Jones

son who corroborated Teele's testimony was Shannon, and the only person who corroborated Shannon's testimony was Teele. Given the interdependence of Teele's and Shannon's testimony, the critical importance of their testimony to the state's case, the long delay precipitating their decision to come forward with information, and the powerful, personal self-interest that both witnesses had to testify against the defendant in light of their own involvement in the criminal justice system, the jury might have viewed both witnesses' testimony differently if it had received proper instructions on evaluating Shannon's credibility. We therefore cannot conclude that the trial court's improper refusal to issue the jailhouse informant instruction requested by the defendant was harmless.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to remand the case to the trial court for a new trial.

In this opinion PALMER, McDONALD and D'AURIA, Js., concurred.

PALMER, J., concurring. I fully agree with the majority opinion. I write separately only to note my belief that, for the reasons previously expressed in *State* v. *Diaz*, 302 Conn. 93, 115, 25 A.3d 594 (2011) (*Palmer, J.*, concurring), a special credibility instruction should be given whenever a government informer seeks a benefit from the state in return for his or her testimony. See id., 121–22 (*Palmer, J.*, concurring) ("Because informers seeking a benefit from the state have a strong motive to falsely inculpate the accused . . . I agree with those courts that require a special credibility instruction whenever a government informer hopes or expects to receive a benefit from the prosecution. As the Second Circuit Court of Appeals has stated, 'a defendant who makes [a request for a special credibility instruction]

State *v.* Jones

is entitled to a charge that identifies the circumstances that may make one or another of the government's witnesses particularly vulnerable to the prosecution's power and influence . . . and that specifies the ways (by catalog or example) that a person so situated might be particularly advantaged by promoting the prosecution's case.' *United States* v. *Prawl*, 168 F.3d 622, 628 (2d Cir. 1999). In other words, the defendant is entitled to a charge that 'invite[s] focus on individual predicaments of the witnesses' and contains 'mention [of] the incentives that follow from certain transactions with the government.' Id., 628–29 . . . .'' (Citations omitted; footnote omitted.)). The defendant in the present case, Billy Ray Jones, however, has made no such claim, and, consequently, the majority has no reason to address it. Because, in my view, the majority correctly analyzes and resolves the claim that the defendant has raised, I join the majority opinion.

ROBINSON, C. J., with whom MULLINS and KAHN, Js., join, dissenting. In *State* v. *Diaz*, 302 Conn. 93, 109–11, 25 A.3d 594 (2011), this court declined to exercise its supervisory authority over the administration of justice to extend its earlier decision in *State* v. *Patterson*, 276 Conn. 452, 470, 886 A.2d 777 (2005), which required a special credibility instruction for jailhouse informants, to all witnesses who are in a position to receive a benefit from the state. In distinguishing jailhouse confessions from testimony about the witness' observations, the court stated that ''to require a special credibility instruction for all witnesses who may be in a position to receive a benefit from the state because they are involved in some way with the criminal justice system . . . would [create] an exception that would swallow the rule that the trial court generally is not required to give such an instruction for the state's witnesses.'' *State* v. *Diaz*, supra, 110. Primarily for this reason, I respectfully disagree with the majority's extension of the meaning of ''jailhouse informant'' for pur-

State *v.* Jones

poses of the *Patterson* instruction to include incarcerated individuals who cooperate with law enforcement by providing information regarding inculpatory statements made by a defendant who was not incarcerated at the time. Because I would affirm the judgment of the Appellate Court upholding the murder conviction of the defendant, Billy Ray Jones; see *State* v. *Jones*, 187 Conn. App. 752, 754, 770, 203 A.3d 700 (2019); I respectfully dissent.

I agree with the majority's recitation of the facts, procedural history, and background legal principles. "It is a well established principle that a defendant is entitled to have the jury correctly and adequately instructed on the pertinent principles of substantive law. . . . The charge must be correct in the law, adapted to the issues and sufficient to guide the jury. . . . The primary purpose of the charge to the jury is to assist [it] in applying the law correctly to the facts which [it] find[s] to be established. . . . [A] charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law." (Citation omitted; internal quotation marks omitted.) *State* v. *Patterson*, supra, 276 Conn. 466–67.

"Generally, a [criminal] defendant is not entitled to an instruction singling out any of the state's witnesses and highlighting his or her possible motive for testifying falsely." (Internal quotation marks omitted.) Id., 467. In *State* v. *Patterson*, supra, 276 Conn. 470, this court first held that special credibility instructions were required for jailhouse informant witnesses. The court in *Patterson* considered the similar motives of jailhouse informants and other exceptions to the general rule against

State *v.* Jones

special credibility instructions[1] and concluded that, "[b]ecause the testimony of an informant who expects to receive a benefit from the state in exchange for his or her cooperation is no less suspect than the testimony of an accomplice who expects leniency from the state," defendants are entitled to a special credibility instruction in cases involving jailhouse informants. Id. Although *Patterson* did not define which witnesses qualify as jailhouse informants, the witness at issue in that case had been incarcerated with the defendant and testified to statements made by the defendant while they were incarcerated together. Id., 459. Later, in *State* v. *Arroyo*, 292 Conn. 558, 564, 973 A.2d 1254 (2009), cert. denied, 559 U.S. 911, 130 S. Ct. 1296, 175 L. Ed. 2d 1086 (2010), this court expanded the *Patterson* rule to include jailhouse informants who have not yet received a benefit from the state. As in *Patterson*, the witnesses at issue in *Arroyo* were individuals incarcerated with the defendant who testified to confessions made by the defendant in a courthouse lockup. Id., 564–65.

Subsequently, in *State* v. *Diaz*, supra, 302 Conn. 93, this court provided a more precise definition of the term "jailhouse informant." In *Diaz*, three witnesses "who had criminal matters pending" testified against the defendant at trial. Id., 95. Two of the witnesses, Corey McIntosh and James Jefferson, testified about events they observed outside of prison that connected the defendant to the crime. Id., 96–97. A third witness, Eddie Ortiz, testified regarding events observed outside of prison as well as the defendant's confession to him while they were in lockup together. Id., 96. The defendant in *Diaz* first argued that it was plain error for the court not to provide a *Patterson* instruction "in light

[1] "This court has held . . . that a special credibility instruction is required for three types of witnesses, namely, complaining witnesses, accomplices and jailhouse informants." (Footnotes omitted.) *State* v. *Diaz*, supra, 302 Conn. 101–102.

State *v.* Jones

of [the witnesses'] involvement in the criminal justice system and the possibility that they would receive some benefit from the government in exchange for their testimony.'' Id., 99. In rejecting the plain error claim, this court observed: ''Typically, a jailhouse informant is a prison inmate who has testified about confessions or inculpatory statements made to him by a fellow inmate. Indeed, this court's decision in *Patterson* was based on that premise. . . . *Patterson* has not been applied to require a special credibility instruction when an incarcerated witness has testified concerning events surrounding the crime that he or she witnessed outside of prison, as distinct from confidences that the defendant made to the witness while they were incarcerated together.'' (Citation omitted.) Id., 102. Accordingly, the court determined that McIntosh and Jefferson were not jailhouse informants under *Patterson* and *Arroyo*, as they ''testified only about the events surrounding the shooting'' that they had observed outside of prison. Id., 104. The court then concluded that, although the trial court failed to give a special credibility instruction with regard to the testimony of Ortiz, who qualified as a jailhouse informant, this omission was not plain error requiring a new trial because the court ''gave a general credibility instruction and the jury was made aware of Ortiz' motivation for testifying.'' Id., 105.

The defendant in *Diaz* also requested that we exercise our supervisory authority ''to instruct the trial courts that they must give a special credibility instruction whenever a witness in a criminal case is incarcerated or is serving out a sentence, *or otherwise is in a position to receive a benefit from the state in exchange for testifying* . . . .'' (Emphasis added.) Id., 106. The court noted the concern, as expressed in *Arroyo*, that a jury may be unaware of the motivations behind a witness' testimony. Id., 109. The court nevertheless disagreed with the defendant's argument ''that these concerns

State *v.* Jones

are as weighty in cases [*in which*] *the witness is not testifying about a jailhouse confession*, but is testifying about events concerning the crime that the witness observed. Testimony by a jailhouse informant about a *jailhouse confession* is inherently suspect because of the ease with which such testimony can be fabricated, the difficulty in subjecting witnesses who give such testimony to meaningful cross-examination and the great weight that juries tend to give to confession evidence. . . . In contrast, when a witness testifies about events surrounding the crime that the witness observed, the testimony can be compared with the testimony of other witnesses about those events, and the ability of the witness to observe and remember the events can be tested. Accordingly, cross-examination and argument by counsel are far more likely to be adequate tools for exposing the truth in these cases than in cases involving jailhouse confessions.'' (Citations omitted; emphasis added.) Id., 109–10. After declining to exercise its supervisory authority, the court emphasized that it remains in the discretion of the trial court ''to give a cautionary instruction to the jury whenever the court reasonably believes that a witness' testimony may be particularly unreliable because the witness has a special interest in testifying for the state and the witness' motivations may not be adequately exposed through cross-examination or argument by counsel.'' Id., 113.

The reasons supporting this court's refusal to exercise its supervisory authority in *Diaz* apply with equal force to the present case. The witness at issue, Larry Shannon, was not testifying about a jailhouse confession made while he was incarcerated with the defendant and, therefore, does not qualify as a jailhouse informant. Connecticut courts have routinely limited the definition of a jailhouse informant to only those individuals testifying to statements made by the defendant while the

State *v.* Jones

witness and the defendant were incarcerated together.[2]
See *State* v. *Salmond*, 179 Conn. App. 605, 630, 180 A.3d
979 (concluding that *Patterson* held that "a special cred-
ibility instruction is required in situations [in which] a
prison inmate has been promised a benefit by the state
in return for his or her testimony regarding incriminat-
ing statements made by a fellow inmate" while both were
incarcerated (internal quotation marks omitted)), cert.
denied, 328 Conn. 936, 183 A.3d 1175 (2018); *State* v.
*Franklin*, 175 Conn. App. 22, 35 n.14, 166 A.3d 24 ("[the
witness] met the definition of a jailhouse informant
because he was incarcerated at the time of his testimony
at the defendant's trial and his testimony was about a
crime that he had not witnessed personally, but a con-

---

[2] Other states limit the definition of a jailhouse informant in a similar
manner, whether by statute or case law. See Cal. Penal Code § 1127a (a)
(Deering 2008) (defining "in-custody informant" as "a person, other than a
codefendant, percipient witness, accomplice, or coconspirator whose testi-
mony is based upon statements made by the defendant while both the
defendant and the informant are held within a correctional institution");
*Wright* v. *State*, 30 P.3d 1148, 1152 (Okla. Crim. App. 2001) (concluding
that defendant's "statements to [the witness] were not made while he was
incarcerated" and, thus, did not qualify witness as jailhouse informant, even
though witness was "in jail on unrelated charges at the time he gave his
statement to [the] police" (internal quotation marks omitted)); *Hardesty* v.
*State*, Docket No. 03-18-00546-CR, 2019 WL 4068564, *3 (Tex. App. August
29, 2019, pet. ref'd) (concluding that witness, who testified to defendant's
confession, was not jailhouse informant because they were not incarcerated
together as required under Texas statute); see also R. Bloom, "Jailhouse
Informants," 18 Crim. Just. 20, 20 (Spring, 2003) ("[u]nlike 'street' informants,
jailhouse informants are witnesses who testify as to statements made by a
fellow inmate while both are in custody"); J. Roth, "Informant Witnesses
and the Risk of Wrongful Convictions," 53 Am. Crim. L. Rev. 737, 748 (2016)
("[T]he typical jailhouse informant claims to have overheard a defendant's
inculpatory statement while both are in custody pending trial; it is this
statement that is of value to prosecutors and agents. But the jailhouse
informant usually does not assert any personal, or prior, knowledge of the
offense the defendant is charged with having committed. *By contrast, non-
jailhouse informants—even those who already are in custody when they
begin to work with law enforcement—typically offer information about
crimes they observed, participated in, or otherwise learned about prior to
their custody.*" (Emphasis added.)).

State *v.* Jones

fession or inculpatory statements made by the defendant
during their incarceration''), cert. denied, 327 Conn. 961,
172 A.3d 801 (2017); *State* v. *Carattini*, 142 Conn. App.
516, 523–24, 73 A.3d 733 (witness testified as to defen-
dant's statements regarding victim's death made outside
of prison, so ''he did not meet [the] Supreme Court's
definition of a jailhouse informant''), cert. denied, 309
Conn. 912, 69 A.3d 308 (2013).

I disagree with the majority's conclusion that the loca-
tion of the confession does not matter to the jailhouse
informant analysis. The United States Supreme Court
has noted that the circumstance of incarceration presents
an important factor in cases involving inmates working
as paid informants who elicit statements for the govern-
ment: ''[The] [c]ourt [in *Miranda* v. *Arizona*, 384 U.S.
436, 467, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966)] noted
the powerful psychological inducements to reach for
aid when a person is in confinement. . . . [T]he mere
fact of custody imposes pressures on the accused; con-
finement may bring into play subtle influences that will
make him particularly susceptible to the ploys of under-
cover [g]overnment agents.'' (Citation omitted.) *United
States* v. *Henry*, 447 U.S. 264, 274, 100 S. Ct. 2183, 65
L. Ed. 2d 115 (1980). Any pressures that accompany
incarceration that could lead a defendant to speak to
another inmate about his crimes were not at play in
the present case. See *State* v. *Smith*, 289 Conn. 598, 633,
960 A.2d 993 (2008) (confession to jailhouse informant
was made ''in light of the camaraderie that arises under
such shared circumstances'').

Indeed, ''[i]n-custody confessions are often easy to
allege and difficult, if not impossible, to disprove. To
generate a credible confession, a snitch need only learn
some basic details about a fellow inmate's case. A lying
jailhouse snitch might gather information about a high
profile case simply by reading newspaper stories or
watching television broadcasts about the case. Snitches

State *v.* Jones

can also obtain details about fellow prisoners' cases by
speaking with complicit friends and relatives who can
monitor preliminary hearings and other case proceed-
ings and feed details to the aspiring snitch. In some cases,
informants share knowledge about case facts with each
other, permitting multiple informants to corroborate
each other's testimony. Investigators have documented
cases in which prison inmates purchased information
from others outside of prison in an attempt to trade it
for reduced sentences.'' (Footnotes omitted; internal quo-
tation marks omitted.) R. Covey, ''Abolishing Jailhouse
Snitch Testimony,'' 49 Wake Forest L. Rev. 1375,
1380–81 (2014); see *State* v. *Leniart*, 333 Conn. 88, 167,
215 A.3d 1104 (2019) (*Palmer*, *J.*, concurring in part
and dissenting in part) (distinguishing ''traditional coop-
erating witnesses,'' such as coconspirators, from use
of jailhouse informant testimony insofar as ''the testi-
mony of jailhouse informants is readily fabricated and
otherwise particularly suspect for a number of reasons
not generally apparent to jurors,'' particularly because
''more traditional cooperating witnesses . . . have not
come forward as part of a prison culture that is largely
hidden from public view and whose testimony is not
so easily concocted''); *State* v. *Diaz*, supra, 302 Conn.
109 (noting that ''jailhouse confessions'' are challenging
to confirm and to successfully cross-examine).

These concerns about jailhouse informants are inap-
plicable in this case, as Shannon's testimony could be
meaningfully validated in ways that a jailhouse confes-
sion could not. Shannon testified that (1) he was in
Marina Village, a Bridgeport housing complex, the day
after the shooting, (2) he saw the defendant there, (3)
there was a news clip about the murder on the televi-
sion, (4) the defendant told Shannon he walked up to
the victim, asked ''what's poppin' now,'' and shot the
victim, and (5) the defendant showed Shannon a silver,
nine millimeter Ruger handgun. Unlike a jailhouse con-

State *v.* Jones

fession, which is difficult to verify, Shannon's testimony
could be validated and meaningfully cross-examined by
questioning the circumstances surrounding the alleged
confession. For example, other witnesses could confirm
or disprove elements of the confession, like whether the
defendant and Shannon were present at Marina Village
the day after the shooting.

For these reasons, I would limit the definition of jail-
house informant testimony to those statements made
by the defendant to another inmate while both were
incarcerated in order to afford the phrase its customary
meaning. Individuals testifying to statements made out-
side of the incarceration setting are simply informants
or cooperating witnesses, as they are not testifying
to statements made in a "jailhouse." Shannon is not a
jailhouse informant, as jailhouse informants are con-
nected to the defendant only by virtue of their status
as an inmate, unlike Shannon, who knew the defendant
outside of jail and was present at the scene of the crime
to which the defendant confessed to committing. If the
definition of jailhouse informant is no longer afforded
its customary meaning, the number of witnesses who
would qualify as a jailhouse informant are endless, and
"we would be creating an exception that would swallow
the rule that the trial court generally is not required to
give such an instruction for the state's witnesses. It is
an unfortunate reality that the government cannot be
expected to depend exclusively upon the virtuous in
enforcing the law. . . . Rather, the government must
often rely on witnesses with a less than impeccable
history in order to prosecute criminal activity.'' (Cita-
tion omitted; internal quotation marks omitted.) *State*
v. *Diaz*, supra, 302 Conn. 110–11.

Not only was the defendant in the present case not
incarcerated at the time he allegedly made the inculpa-
tory statements to Shannon, Shannon also was not
incarcerated at the time he testified about those state-

State *v.* Jones

ments. I therefore disagree with the majority's categorization of Shannon as ''an incarcerated witness who testified about inculpatory statements that the defendant made outside of prison . . . .'' See *State* v. *Diaz*, supra, 302 Conn. 110 (''when a witness is not incarcerated, but is merely on parole or subject to pending charges, the special concerns relating to incarcerated witnesses do not come into play''); *State* v. *Carattini*, supra, 142 Conn. App. 523 (distinguishing witness from jailhouse informant definition in *Diaz* because witness was not incarcerated when he testified). After Shannon reached out to the police in 2013, he testified that the state assisted him by getting his bond lowered. He then pleaded guilty to two felonies in 2014 and did not have to return to jail. Instead, Shannon was on probation when he testified for the state. Although Shannon cooperated with the police while he was incarcerated, this does not transform him into an incarcerated informant at the time of his testimony. This distinction is important because Shannon's testimony is even more credible than the testimony at issue in *Diaz*, in which the witnesses ''had criminal matters pending''; *State* v. *Diaz*, supra, 302 Conn. 95; as Shannon had *already* received assistance with his case before testifying and, therefore, had less incentive to testify falsely in order to secure a future benefit from the state. Accordingly, the majority's reliance on the motivations of the ''incarcerated informant'' are largely inapplicable to Shannon with respect to the motivation to lie in exchange for a *future* benefit that characterizes typical jailhouse informant testimony.[3]

---

[3] I acknowledge that an informant who is not incarcerated at the time of testimony, but has pending criminal matters or is otherwise facing incarceration, may have a greater incentive to testify falsely than an informant like Shannon, who has no pending criminal matters. For this reason, an individual's custodial status at the time they testify or provide the information to the police should not determine whether they are considered a jailhouse informant. If the custodial status of the witness at those times were the sole determinative factor, then the jury instruction would not be given when an actual jailhouse informant—testifying about communications made while incarcerated—happens to be released prior to testifying or cooperating. Put

State *v.* Jones

Finally, I note my disagreement with the majority's reliance on the definition provided by the legislature in No. 19-131 of the 2019 Public Acts (P.A. 19-131), which sought to address the "problems inherent in the state's use of jailhouse informant testimony" by enhancing the state's disclosure obligations and providing for an evidentiary hearing to establish the reliability of proffered jailhouse informant testimony in the most serious felony cases. *State* v. *Leniart*, supra, 333 Conn. 164–66 (*Palmer, J.*, concurring in part and dissenting in part). In my view, the majority's reliance on P.A. 19-131, as amended by No. 19-132 of the 2019 Public Acts (P.A. 19-132), is misplaced. The statutory definition provides: " '[J]ailhouse witness' *means a person who offers or provides testimony concerning statements made to such person by another person with whom he or she was incarcerated*, or an incarcerated person who offers or provides testimony concerning statements made to such person by another person who is suspected of or charged with committing a criminal offense." (Emphasis added.) P.A. 19-132, § 6, codified at General Statutes (Supp. 2020) § 54-86o (d).

Although the first of these definitions in P.A. 19-132 is entirely consistent with our definition in *Diaz*, the second definition is broader, as it does not specifically require the offered statement to be made while both individuals are incarcerated and, therefore, is inconsistent with our existing definition of a jailhouse informant. Yet, this is not an irreconcilable conflict, as one of the included definitions is found in our case law. Also, P.A. 19-131 does not discuss jury instructions and, instead, requires trial courts to conduct hearings to determine the reliability and admissibility of jailhouse informant testimony. See P.A. 19-131, § 2, codified as

differently, the determination of who qualifies to be a jailhouse informant depends on the timing and circumstances of how that individual obtained the information and, specifically, on whether the defendant made the statements at issue to the informant while *both* were incarcerated.

State *v.* Jones

amended at General Statutes (Supp. 2020) § 54-86p. Although Shannon may fall under the second definition provided by the legislature, I do not believe that we should assume that the legislature is invalidating our case law's definition as to jury instructions. See, e.g., *State* v. *Fernando A.*, 294 Conn. 1, 19, 981 A.2d 427 (2009) ("the legislature is presumed . . . to be cognizant of judicial decisions relevant to the subject matter of a statute . . . and to know the state of existing relevant law when it enacts a statute" (internal quotation marks omitted)). Indeed, I am particularly hesitant to act in this area, given this very recent activity by our legislature, which has the " 'primary responsibility' " for the public policy of this state; *Doe* v. *Hartford Roman Catholic Diocesan Corp.*, 317 Conn. 357, 438, 119 A.3d 462 (2015); and is better equipped to "balanc[e] the various interests and articulat[e] a coherent policy on this matter . . . ." *Commissioner of Public Safety* v. *Freedom of Information Commission*, 312 Conn. 513, 550, 93 A.3d 1142 (2014). Because the legislature was presumed to be aware of our case law's instructional requirements and left them untouched in P.A. 19-131, it is unnecessary to harmonize all of our definitions. In fact, now that the legislature has provided a screening mechanism for jailhouse informant testimony, and only the most reliable evidence will be put before the jury, P.A. 19-131 weighs against the requirement of a special credibility instruction in every instance.

In the present case, I conclude that the trial court appropriately exercised its discretion when it declined to issue a special credibility instruction as to Shannon's testimony.[4] See *State* v. *Diaz,* supra, 302 Conn. 113 (emphasizing "the well established common-law rule

---

[4] In the present case, twenty to thirty people were present when the officers arrived at the scene of the crime, yet none of these potential witnesses was willing to cooperate with the police. Both Shannon and Angela Teele, another cooperating witness, testified that, in their experience, they are not supposed to cooperate with the police. In fact, Teele testified that she feared for her safety and was putting herself at risk by testifying because

State *v.* Jones

that it is within the discretion of a trial court to give a
cautionary instruction to the jury whenever the court
reasonably believes that a witness' testimony may be
particularly unreliable because the witness has a special
interest in testifying for the state and the witness' moti-
vations may not be adequately exposed through cross-
examination or argument by counsel''). The jury was
well aware of Shannon's motives for testifying, as both
the state's attorney and defense counsel had questioned
Shannon about the benefits he received for reaching out
to the police and his past felony convictions.[5] Defense

---

"I was told if I said something that things was gonna happen.'' Shannon
also testified that he feared cooperating due to possible retaliation. Incen-
tives from the state encourage witnesses to testify, despite the dangers of
providing such testimony. Prosecutors may be required to utilize witnesses,
such as Shannon, who are testifying only because they have been assisted
by the state, and requiring a special credibility instruction in all such
instances may cast significant doubt on an otherwise reliable witness. See
*State* v. *Diaz*, supra, 302 Conn. 111 ("the government must often rely on
witnesses with a less than impeccable history in order to prosecute criminal
activity'' (internal quotation marks omitted)). Additionally, as such witnesses
are used with some regularity; see G. Harris, "Testimony for Sale: The Law
and Ethics of Snitches and Experts,'' 28 Pepp. L. Rev. 1, 1 (2000) ("[a]ccording
to [United States] Sentencing Commission studies, one of every five federal
defendants receives a sentencing reduction for 'substantial assistance' to
the government''); the special credibility instruction will become less power-
ful as it will be used more frequently.

[5] Defense counsel rigorously cross-examined Shannon regarding the cir-
cumstances that led him to reach out to the police:

"[Defense Counsel]: And now you indicated earlier, you . . . didn't con-
tact the police on the night of [the] shooting, right?

"[Shannon]: Yes.

"[Defense Counsel]: Okay. And, in fact, you didn't contact the police until
about two and [one-half] years later, right?

"[Shannon]: Yes.

"[Defense Counsel]: Okay. And, at that time, you were in jail, right?

"[Shannon]: Yes.

"[Defense Counsel]: You were being held at Bridgeport Correctional
Center?

"[Shannon]: Yes.

"[Defense Counsel]: Okay. Jail is not a place that you like to be, right?

"[Shannon]: Yes.

"[Defense Counsel]: And you wanted to get out of jail, right?

"[Shannon]: Yes.

State *v.* Jones

counsel also devoted significant portions of his closing argument to Shannon's credibility. As Shannon did not qualify as a jailhouse informant and the jury was well aware of his motivations for testifying, I cannot conclude that the trial court abused its discretion by issuing only a general credibility instruction. Accordingly, I would conclude that the Appellate Court properly upheld the defendant's conviction.

Because I would affirm the judgment of the Appellate Court, I respectfully dissent.

―――――――――

"[Defense Counsel]: Okay. And so it's at that point that you reached out to detectives and said that you have some information about this homicide that occurred on June 21, 2010, right?

"[Shannon]: Yes.

"[Defense Counsel]: And you reached out to them because you were hoping that they could give you some favorable treatment on your jail situation or your . . . criminal charge, right?

"[Shannon]: Yes.

"[Defense Counsel]: In fact, at the time you were . . . charged with a felony, right?

"[Shannon]: Yes.

"[Defense Counsel]: And it carried a maximum penalty of five years in jail, right?

"[Shannon]: Yes."

\* \* \*

"[Defense Counsel]: And, shortly after that, you were released from jail without having to pay a bond, right?

"[Shannon]: Yes.

"[Defense Counsel]: And a bond is money that you have to pay to get out of jail, if you're facing pending charges?

"[Shannon]: Yes.

"[Defense Counsel]: You didn't have the money . . . to get out of jail, right?

"[Shannon]: No.

"[Defense Counsel]: Okay. So you were hoping to trade the information that you ha[d] in order . . . to accomplish that, right?

"[Shannon]: Yes.

"[Defense Counsel]: And, in fact, you were also looking for some favorable treatment on your case, right?

"[Shannon]: Yes."